Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
**DIVERSITY LAW GROUP, A Professional Corporation**
550 South Hope Street, Suite 2655
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

*Additional Counsel On Next Page

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHAVEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONVERSE, INC., an Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 15-cv-03746-NC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:       August 17, 2016<br>Time:       1:00 p.m.<br>Courtroom:  7, 4th Floor<br>Judge:      Hon. Nathanael M. Cousins<br><br>Complaint Filed:    July 10, 2015 |

1

2   WILLIAM L. MARDER, ESQ. (CBN 170131)
    Polaris Law Group LLP
3   501 San Benito Street, Suite 200
    Hollister, CA 95023
4   Tel: (831) 531-4214
    Fax: (831) 634-0333
5   Email: bill@polarislawgroup.com

6
    Dennis S. Hyun (State Bar No. 224240)
7   dhyun@hyunlegal.com
    HYUN LEGAL, APC
8   550 S. Hope St., Suite 2655
    Los Angeles, CA 90071
9   (213) 488-6555
    (213) 488-6554 facsimile
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 17, 2016, at 1:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 7 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable  Nathanael M. Cousins, Plaintiff Eric Chavez ("Plaintiff") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated, for an order:

1. Determining that a class action is proper as to the First, Second, Fourth, Fifth, and Seventh Causes of Action contained in the First Amended Complaint pursuant to Federal Rule of Civil Procedure 23, on the grounds that (1) the Class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the Class, (3) the class representative's claims are typical of the claims of the Class, and (4) the class representative will fairly and adequately protect the interests of the Class.

2. Determining that class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3).

3. Certifying the following Class and Subclass:
   a. All current and former non-exempt retail store employees of Defendant who worked in California during the period from July 10, 2011 to the present (the "Class"); and
   b. All current and former non-exempt retail store employees of Defendant who worked in California  during the period from July 10, 2011 to the present, and who received overtime and additional non-discretionary remuneration (the "Regular Rate Sub-Class").

4. Finding Plaintiff Eric Chavez to be an adequate representative and certifying him as the class representative herein.

5. Finding Plaintiff's counsel and their respective firms, namely Larry W. Lee and Nick Rosenthal of Diversity Law Group, P.C., Dennis S. Hyun of Hyun Legal, APC, and William L. Marder of Polaris Law Group LLP as adequate class counsel and certifying them as class counsel herein.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declarations of Larry W. Lee, Nick Rosenthal, Dennis S.

2

Hyun, William L. Marder, and Eric Chavez filed herewith, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: May 16, 2016                          DIVERSITY LAW GROUP, P.C.


                                        By:/s/ Larry W. Lee
                                             LARRY W. LEE
                                             NICHOLAS ROSENTHAL
                                             Attorneys for Plaintiff and the Class

3

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  APPLICABLE LAW ......................................................................................... 2

   A.  **California Law Requires All Non-Exempt Employees To Be Paid For All Hours Spent Under The Control Of The Employer** .............................................. 2

   B.  **California Law Requires That The Regular Rate Paid For Overtime Factor In Non-Discretionary Bonuses** ...................................................................... 3

III.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 4

   A.  **Defendant's Mandatory, Off-the-Clock Security Check Policy** ................... 4

   B.  **The Common Security Check Experiences of Plaintiff** ............................... 6

   C.  **Defendant's Class-Wide Practice Regarding Calculation of the Regular Rate of Pay for Purposes of Overtime Wages** .................................................... 6

   D.  **Procedural Background** .............................................................................. 7

IV.  ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE EASILY ESTABLISHED .......................................................................................... 8

   A.  **The Requirements of Fed. R. Civ. P. 23(a) are Met** ................................... 8

      1.  **The Classes Are Ascertainable and Meet Numerosity** ........................ 8

      2.  **There Are Common Questions of Law and Fact Upon Which Both Of Plaintiff's Allegations Can Be Resolved** .................................................. 8

         a.  **There Is A Common Question As To Whether The Security Checks Are Hours Worked Under California Law** ..................................... 9

         b.  **There Are Also Common Questions of Law and Fact As to Whether Class Members Were Denied Unfettered Rest Breaks Because of the Security Checks** ..... 13

         c.  **There Are Also Common Questions Of Law And Fact As To Whether Bonuses Should Have Been Included In The Regular Rate Calculation** ................... 14

      3.  **Representative Plaintiff's Claims are Typical** ................................... 15

      4.  **The Adequacy Requirement Is Met** .................................................. 16

         a.  **Plaintiff is an Adequate Representative** ...................................... 16

i

    b. Competent Class Counsel ................................................................. 16

**B. The Predominance Requirement of Fed. R. Civ. P. 23(b)(3) is Met** ........................... 17

**C. A Class Action is the Superior Method for Adjudication** ............................................. 18

**V. A CLASS-WIDE TRIAL IS MANAGEABLE** ..................................................................... 19

**VI. CONCLUSION** .............................................................................................................................. 19

ii

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ................................. 9, 17

*Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 550 (E.D. Cal. 2010) ..................................... 12

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ................................................................. 9

*Avilez v. Pinkerton Gov't Serv.*, 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) ................................ 17

*Bibo v. Fed. Exp., Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *4 (N.D. Cal. Apr. 21, 2009)
............................................................................................................................................... 12

*Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)................................................................. 19

*California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) .. 15

*Californians for Disability Rights v. Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008 ....... 9

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) .................................................. 11

*Chavez v. Lumber Liquidators, Inc.*, No. CV-09-4812 SC, 2012 WL 1004850, at *6 (N.D. Cal.
    Mar. 26, 2012).......................................................................................................................... 15

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, (S.D. Cal. 2010) ............................................... 14

*Frlekin v. Apple Inc.*, 2015 U.S. Dist. LEXIS 92768, at *1-2 (N.D. Cal. July 16, 2015)........ 10, 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)......................................... 8, 15, 17

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) .................... 8

*In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013) ............ 9

*Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK, 2012 WL 1366052, at *20 (C.D. Cal.
    Apr. 18, 2012), *aff'd* (Sept. 3, 2014) .......................................................................... 12, 17, 19

*Kurihara v. Best Buy Co.*, 2007 WL 2501698, at *6 (N.D. Cal. Aug. 30, 2007) ................ 3, 11, 14

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013)......................................... 9, 18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001).. 18

*McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 300 (C.D. Cal. 2011) ..................................... 18

*Miranda v. Coach, Inc.*, No. 14-CV-02031-JD, 2015 WL 1788955, at *2 (N.D. Cal. Apr. 17,
    2015) ......................................................................................................................................... 2

*O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829, at *11 (S.D. Cal. 2008) ........ 19

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 442, 447 (N.D. Cal. 2008)............ 12, 14, 17

*Otsuka v. Polo Ralph Lauren Corp.*, No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) ..................................................................................................................... 2

*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 260-61 (N.D. Cal. 2015)................... 12

*Ricaldai v. U.S. Investigations Serv., LLC*, 878 F. Supp. 2d 1038, 2012 WL 2930474 (C.D. Cal. 2012) ..................................................................................................................... 14

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)................................................... 16

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485-86 (C.D. Cal. 2012)........................... 9

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002)........................................................................................... 15

*Wert v. U.S. Bancorp*, No. 13-CV-3130-BAS BLM, 2014 WL 7330891, at *3 (S.D. Cal. Dec. 18, 2014) ..................................................................................................................... 3

## State Cases

*Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1144 (2012).................................... 14

*Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal. App. 4th 220, 238 (2013)............................... 15

*Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008), as modified on denial of reh'g (Jan. 21, 2009) ......................................................................................... 3

*Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 582 (2000) ...................................... 2, 11

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004)................................... 18

## Other Authorities

Cal. Division of Labor Standards Enforcement ("DLSE") Enforcement Policies and Interpretation Manual at §§ 49.1, 49.2.4 (June 2002)........................................................ 3

DLSE Opinion Letter 1991.03.06-1 ................................................................................ 3

IWC Wage Order No. 7-2001 ................................................................................... 2

## State Statutes

California Business and Professions Code § 17200.................................................... 7

California Labor Code § 226(a) ................................................................................ 7

California Labor Code § 226.7................................................................................ 7

iv

California Labor Code § 510..............................................................................................7

California Labor Code § 510(a) ......................................................................................3

California Labor Code § 512..............................................................................................7

California Labor Code § 1194............................................................................................7

California Labor Code § 1197............................................................................................7

California Labor Code § 2698............................................................................................7

**Federal Rules**

Fed. R. Civ. P. 23 ............................................................................................................8

Fed. R. Civ. P. 23(a)..........................................................................................................8

Fed. R. Civ. P. 23(a)(2) ....................................................................................................8

Fed. R. Civ. P. 23(b)(3)...........................................................................................17, 19

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1    **I.      INTRODUCTION**

2            This case involves two, undisputed, predominant questions of law: First, should

3    Defendant Converse, Inc.'s ("Defendant" or "Converse") employees be compensated for time

4    spent undergoing mandatory off-the-clock security checks?  More specifically, to prevent

5    employee theft, Defendant mandates that all of its retail employees in the State of California

6    undergo a security check whenever they exit the store, whether or not a bag is carried, which

7    includes undergoing a visual inspection, and if carrying a bag, opening their bag to allow for an

8    inspection.  It is further undisputed that employees are <u>not</u> paid for any of this time spent

9    undergoing these checks.  Indeed, Defendant's FRCP 30(b)(6) witness, Kimberly Kiefer,

10   Defendant's Director of Stores, testified "***it is common practice that an associate would clock***

11   ***out and then on their way out the door, they would get their bag checked***."  (Deposition of

12   Kimberly Kiefer ("Kiefer Depo.") 90:9-12).[1]  This admission alone, that it is common practice,

13   mandates that class certification be granted as to the security check claim.

14           Second, did Defendant incorrectly calculate the "regular rate" paid to employees for

15   overtime by not factoring in merit bonuses paid to class members?  It is undisputed that Plaintiff

16   and the putative class members received quarterly bonuses.  However, it is alleged that

17   Defendant's formula for the calculation of the regular rate of pay, for purposes of overtime

18   wages, did not factor in these quarterly bonuses.  It is undisputed that Defendant's formula for

19   calculating the regular rate of pay equally applied to Plaintiff and all members of the putative

20   class.  Indeed, Defendant's recent Motion for Partial Summary Judgment fully supports this class-

21   wide practice.

22           As the facts regarding Defendant's class-wide policies and practices are not disputed, this

23   case presents a common question of liability that is capable of being resolved in one stroke.  In

24   sum, Plaintiff Eric Chavez's ("Plaintiff") Motion for Class Certification should be granted.

25   ///

26   ///

27
28   ------------------------

[1] Relevant portions of the Deposition of Kimberly Kiefer are attached to the Declaration of Larry W. Lee as Exhibit B.

1

1  **II.    APPLICABLE LAW**

2     **A.  California Law Requires All Non-Exempt Employees To Be Paid For All Hours**

3        **Spent Under The Control Of The Employer**

4     The IWC Wage Order at issue here requires employers to pay employees for all "hours

5  worked." IWC Wage Order No. 7-2001. "Hours worked" is defined as "the time during which an

6  employee is subject to the control of an employer, and includes all the time the employee is

7  suffered or permitted to work, whether or not required to do so." *Id*. § 2(G)

8     As the California Supreme Court held in *Morillion v. Royal Packing Co*., 22 Cal.4th 575,

9  582 (2000), an employee must be paid whenever he or she is "subject to the control of an

10  employer."  In *Morillion*, 22 Cal. 4th at 586-87, the California Supreme Court considered whether

11  employees must be compensated for time spent riding an employer-provided bus to the fields

12  where they worked.  The employer required the employees to ride the bus to the fields.  Given

13  that the employer controlled the employee's activities by requiring them to ride the buses, the

14  California Supreme Court held that this time must be paid.  *Id.*

15     Similarly, here, Defendant requires all of its employees to undergo a security check after

16  clocking-out whenever these employees leave the store, which includes a visual inspection, as

17  well as a physical inspection of the contents of any bags brought onto the premises.  These

18  security checks are mandated by company policy.  As such, it is undisputed that these employees

19  are under Converse's control and, therefore, should be paid.  *See*, *e.g.*, *Miranda v. Coach, Inc.*,

20  No. 14-CV-02031-JD, 2015 WL 1788955, at *2 (N.D. Cal. Apr. 17, 2015) (holding that the

21  "plaintiffs' claims under the California Labor Code are viable and will go forward"; the plaintiffs

22  alleged that all employees were required to undergo security checks before leaving the store);

23  *Otsuka v. Polo Ralph Lauren Corp*., No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan.

24  25, 2010) ("Polo does not dispute that it maintains a uniform policy requiring employees to

25  submit to bag searches, or that it does not compensate employees for time spent waiting for these

26  searches.").

27     Further, as Defendant admits that all employees must also undergo a security check before

28

2

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1  leaving for rest breaks, it is undisputed that this also presents a common policy aptly suited for

2  class treatment. *Kurihara v. Best Buy Co*., 2007 WL 2501698, at *6 (N.D. Cal. Aug. 30, 2007)

3  ("whether Best Buy's employee inspection policy was unlawful and/or interfered with its

4  employees' entitlement to meal and rest periods-is the 'dominant issue' in the case").

5  **B. California Law Requires That The Regular Rate Paid For Overtime Factor In Non-**

6  **Discretionary Bonuses**

7  Pursuant to California law, employers must include all non-discretionary items of pay,

8  including annual merit bonuses, into the regular rate of pay for purposes of calculating overtime

9  pay. Cal. Division of Labor Standards Enforcement ("DLSE") Enforcement Policies and

10  Interpretation Manual at §§ 49.1, 49.2.4 (June 2002) (attached as Exhibit "A" to Request for

11  Judicial Notice ("RJN")); *Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008),

12  as modified on denial of reh'g (Jan. 21, 2009) ("Where a bonus payment is considered a part of

13  the regular rate at which an employee is employed, it must be included in computing his regular

14  hourly rate of pay and overtime compensation."); *Wert v. U.S. Bancorp*, No. 13-CV-3130-BAS

15  BLM, 2014 WL 7330891, at *3 (S.D. Cal. Dec. 18, 2014) ("'Regular rate of pay' [under

16  California law] takes into account compensation beyond the normal hourly rate, including

17  commissions and non-discretionary bonuses.") (Citing Cal. Labor Code § 510(a)).

18  In this respect, California law is even more expansive and protective of employees than

19  federal law.  As the DLSE has further explained in its Opinion Letter:

20  Bonus payments, with certain exceptions, are included in the calculation of overtime.
21  Bonuses based on incentive must be calculated into the employee's wages to determine
   the "regular rate of pay."

22  (DLSE Opinion Letter 1991.03.06-1 at p. 1, emphasis added, attached as Exhibit "B" to RJN).

23  The DLSE stressed that with very narrow exceptions, all non-discretionary remuneration

24  must be included in the regular rate of pay, including discretionary pay, or gifts.  (*Id*. at p. 1, n. 1).

25  For example, if an employee normally earns $10 per hour, his/her respective overtime rate

26  of pay would equate to $15 per hour (1.5 times the normal hourly rate of pay) if the employee

27  does **not** earn any additional incentive compensation.  In other words, the regular rate of pay in

28

3

1  this situation would simply be the employee's hourly rate of pay, $10 per hour.  However, if the

2  same employee does in fact earn additional incentive compensation, such as an annual

3  performance bonus, during the same time period he/she works the overtime hours, the respective

4  employee's overtime rate of pay would be increased.  This is due to the fact that the bonus would

5  be added to the hourly rate of pay, thereby increasing the regular rate of pay, and in turn would

6  thereby also increase the overtime rate of pay.  Indeed, the exact manner in which such incentive

7  compensation are calculated into the regular rate of pay is specified the DLSE's Enforcement

8  Policies and Interpretations Manual ("DLSE Manual") at section 49, and in particular, section

9  49.2.4.  Accordingly, the additional overtime pay based upon the bonus being factored into the

10  normal hourly rate of pay is derived by multiplying a particular rate of pay by the applicable

11  overtime hours worked.

12  **III.    FACTUAL AND PROCEDURAL BACKGROUND**

13      **A.    Defendant's Mandatory, Off-the-Clock Security Check Policy**

14        As there is no dispute about the actual policy at issue, the factual recitation necessary for

15  the instant Motion is relatively simple.  Defendant Converse, Inc. ("Converse" or "Defendant")

16  operates approximately 20 retail stores throughout the State of California.  (Deposition of Corey

17  May ("May Depo."), 24:16-18).[2]  Converse houses all employee time-clocks in the break-room or

18  "locker" area, which is located at the back of every store behind the stockroom.  (Kiefer Depo.

19  41:13-18; 43:21-24).  Although the store layouts may slightly vary, it is Converse's policy to

20  require all employees to enter/exit through the front door used by the general public.  (Kiefer

21  Depo. 43:18-20; 113:11-114:8).

22        Converse has set company policies that apply to all of its California retail locations and

23  with which all California employees are to comply with.  (Kiefer Depo., 66:16-25).  Specifically,

24  Converse mandates that all of its retail employees submit to a "security check" before exiting the

25  store at any time (whether at the end of a shift or during a break), regardless of whether they have

    a bag or not.  (Kiefer Depo. 65:2-5; 153:23-154:2; 176:7-11, 177:2-13).  In other words,

26

27  _____

[2] The relevant portions of the deposition of Corey May, one of Defendant's FRCP 30(b)(6) witness, is attached to the
28  supporting Declaration of Larry W. Lee as Exhibit A.

1   whenever an employee leaves the store, he or she must meet with the manager at the store

2   entrance/exit and undergo a visual inspection, which consists of the manager visually inspecting

3   the employee to ensure that the employee does not have a bag or any unpaid merchandise.

4   (Kiefer Depo. 63:17-64:24; 65:2-5; 70:13-75:3; 91:14-24).   Thus, this security check policy

5   mandates a security check whenever an employee leaves the store, including for rest breaks.

6   (Kiefer Depo. 176:7-11, 177:2-13).

7        Further, when an employee brings a bag, the employee must also open his or her bag so

8   the manager can conduct a visual inspection of the contents of the bag.   (Kiefer Depo. 63:17-

9   64:24).  All security checks are to be performed at the point of exit, which is at the front entrance

10  of each store.  (Kiefer Depo. 88:21-89:22; 89:24-90:12).   Converse has not changed its off-the-

11  clock security check policy and the same policy has been in place over the entire class period.

12  (Kiefer Depo. 70:13-75:3, 84:4-9, 87:5-16, Exs. 3& 4).

13       In fact, Converse's admitted company policy is that time spent waiting for and submitting

14  to security checks is *off*-the-clock: **_"it is common practice that an associate would clock out and_**
    **_then on their way out the door, they would get their bag checked_**."  (Kiefer Depo. 89:24-90:12).

15       Indeed, this admitted practice is further supported by the logic in the manner in which the

16  employee time clocks are placed in relation to where the security checks take place.  Specifically,

17  employee time clocks are located at the back of each of Defendant's retail stores, which is never

18  located anywhere remotely close to the front entrance.  (Kiefer Depo. 41:13-18; 43:21-24).  These

19  break-rooms are always located at the back of the store for single-level stores, and on the top

20  floor for most of Defendant's multiple-level stores.  (Kiefer Depo. 41:13-18; 43:21-24, 117:7-

21  118:25).  As further shown above, all security checks are to take place at the front entrance of

22  each retail store.  (Kiefer Depo. 88:21-89:22; 89:24-90:12).  Thus, it would clearly be impractical

23  and illogical for employees to first be checked at the front of the store, then walk all the way

24  through to store to clock out, and then walk through the store again to the front entrance without

25  having to be checked again.  Rather, and as supported by Defendant's own testimony, the logical

26  process is for the employees to first clock out, then walk through the store, and finally get

27  checked at the front entrance and released from the store, and thereby resulting in the security

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

check being performed off-the-clock.

**B.      The Common Security Check Experiences of Plaintiff**

Plaintiff was employed by Defendant as an hourly-paid employee from on or about September 2010 to on or about October 7, 2015, at Defendant's retail store located in Gilroy, California.  (Declaration of Eric Chavez ("Chavez Decl.") ¶ 2.  Plaintiff was subject to security checks whenever he left the store, which included undergoing a visual inspection, as well as opening any bags he had with him.  (Chavez Decl. ¶¶ 3-7).  Plaintiff was never compensated by Defendant for the time spent undergoing these security checks as they were all done off-the-clock.  (*Id.*)  With respect to his rest breaks, while rest breaks were taken on-the-clock, because of the security check, the actual amount of time that Plaintiff was able to take an unfettered rest break was cut short.  (Chavez Decl. ¶ 3).

**C.  Defendant's Class-Wide Practice Regarding Calculation of the Regular Rate of Pay for Purposes of Overtime Wages**

Kimberly Kiefer was also designated as the FRCP 30(b)(6) witness to testify on behalf of the Company relating to the regular rate of pay for California employees during the class period, including how it is calculated and paid.  (Kiefer Depo. 29:11-17, Ex. 100).   As Ms. Kiefer testified, Defendant's Quarterly Bonus is comprised of various factors, including a Merit Developmental Lump Sum Award (a performance based award), paid time off, as well as the respective store's revenue achievement.  (Kiefer Depo. 192:5-195:6).  Thus, the Quarterly Bonus is based on a number of factors, with the employee's overtime and straight time being only a small selection of those factors.  Converse has used this formula since 2011, through the present. (Kiefer Depo. 195:22-196:2).

This is further confirmed by the bonus plan documents attached to the Declaration of Fabi Arevalo ("Arevalo Decl.") submitted by Defendant in support of its Motion for Partial Summary Judgment (*See* Dkt. No. 56).

Finally, and most critical, Defendant admits that the Quarterly Bonuses are never added into the employee's regular rate of pay for purposes of calculating the overtime rate of pay. (Kiefer Depo. 209:18-210:14).  Specifically, as Defendant admits, the overtime rate of pay, as a

6

1   matter of corporate policy and practice, is always paid at 1.5 times the **base** rate of pay, and that

2   the Quarterly Bonus is never used to increase an employee's overtime rate of pay.  (*Id*.).  Again,

3   this is also supported by Defendant's Motion for Partial Summary Judgment.

4       **D.**    **Procedural Background**

5       Plaintiff filed a class-action complaint on July 10, 2015 in Santa Clara Superior Court.  On

6   August 17, 2015, Defendant removed the matter to this Court.  On December 4, 2015, Plaintiff

7   filed a First Amended Complaint.  The First Amended Complaint alleges causes of action for (1)

8   violation of California Labor Code §§ 1194 and 1197 for failure to pay minimum wages; (2)

9   violation of California Labor Code §§ 510 and 1194 for failure to pay overtime wages; (3)

10  violation of California Labor Code §§ 226.7 and 512 for failure to provide proper meal breaks;

11  (4) violation of California Labor Code § 226.7 for failure to provide proper rest breaks; (5)

12  violation of California Labor Code § 226(a); (6) violation of California Labor Code § 2698, *et*

13  *seq.*; (7) violation of  California Business and Professions Code § 17200 *et seq.* for unfair

14  business practices.    For purposes of this Motion for Class Certification, Plaintiff does not seek

15  certification as to the third cause of action for failure to provide meal breaks.  All other causes of

16  action, including the fourth cause of action for rest break violations, are predicated on Plaintiff's

17  security check claim and/or Plaintiff's regular rate calculation claim.

18      On December 18, 2015, Defendant took the deposition of Plaintiff Eric Chavez.

19  (Declaration of Larry W. Lee ("Lee Decl.") ¶ 3).  On December 11, 2015, Plaintiff took the

20  deposition of Corey May, who was designated as Defendant's FRCP 30(b)(6) witness for topics

21  related to the security camera systems in Defendant's locations and the storage of video footage.

22  Lee Decl. ¶ 4, Exh. A.  On March 2, 2016 and April 27 2016, Plaintiff took the deposition of

23  Kimberley Kiefer, who was designated as Defendant's FRCP 30(b)(6) witness regarding

24  Defendant's policies, practices and procedures related to employee security checks, and the

25  calculation of the regular rate of pay for purposes of overtime wages.  Lee Decl. ¶ 5, Exh. B.

26      During the discovery phase of this lawsuit related to class certification, Plaintiff also

27  sought written discovery, including Plaintiff's Second Set of Interrogatories, which Defendant

28  responded to on April 15, 2016.  Lee Decl. ¶ 6, Exh. C.

1    **IV.    ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE EASILY**

2    **ESTABLISHED**

3    Rule 23 of the Federal Rules of Civil Procedure authorizes class actions when the class is

4    so numerous that joinder of all members is impracticable, there are questions of law or fact

5    common to the class, the claims or defenses of the representative parties are typical of the claims

6    or defenses of the class, and the representative parties will fairly and adequately protect the

7    interests of the class.  *See* Fed. R. Civ. P. 23(a).  Additionally, the requirements of at least one

8    subsection of Rule 23(b) must be satisfied.

9          **A.    The Requirements of Fed. R. Civ. P. 23(a) are Met**

10              **1.    The Classes Are Ascertainable and Meet Numerosity**

11    Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members

12   is impracticable."  "'Impracticability' does not mean 'impossibility,' but only the difficulty or

13   inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*,

14   329 F.2d 909, 913-914 (9th Cir. 1964) (citation omitted).

15    The Class is both ascertainable, from Defendant's own records, and numerous.  As set

16   forth in Defendant's Notice of Removal, as of August 17, 2015, Defendant had identified at least

17   1,532 non-exempt employees who belong to the class.  (See Declaration of Steven Nelson in

18   Support of Defendant's Notice of Removal ("Nelson Decl.") ¶¶ 4-5).

19    As to the Regular-Rate Sub Class, Defendant's Responses to Plaintiff's Second Set of

20   Interrogatories admitted that there are hundreds of employees who earned overtime during the

21   same period the same respective employee also earned a Quarterly Bonus.  Lee Decl. Exh. C.

22    Thus, not only is the class sufficiently numerous, but clearly ascertainable from

23   Defendant's own records.

24              **2.    There Are Common Questions of Law and Fact Upon Which Both Of**

25                     **Plaintiff's Allegations Can Be Resolved**

26    There must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

27   This requirement "has been construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

28   1019 (9th Cir. 1998).  Indeed, "[t]he existence of even one significant issue common to the class

8

is sufficient to warrant certification." *Californians for Disability Rights v. Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008); *see also Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ("all that Rule 23(a)(2) requires is 'a single significant question of law or fact'"). Commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This case contains two distinct issues, both of which contain only a limited question of law and fact and which easily satisfy the commonality requirement as to the Class seeking certification in this action.

### a. There Is A Common Question As To Whether The Security Checks Are Hours Worked Under California Law

The first question presented by this case is quite simple:

- Should Defendant's mandatory security checks be deemed as "hours worked" under California law?

Plaintiff anticipates that Defendant will focus on alleged differences in the damages suffered by putative class members in an attempt to demonstrate lack of commonality. However, differences in damages are not a proper basis for undermining commonality. Commonality in this instance simply requires that class members be subject to a common policy or practice – unpaid bag or security checks – not that all putative class members suffered the same harm. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (holding that purported differences in damages cannot defeat class certification: "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013) ("even after *Comcast*, under Ninth Circuit law, the fact that damages calculations would require individualized inquiries does not defeat certification of a Rule 23(b)(3) class"; "[t]hus, so long as 'damages will be calculated based on the wages each employee lost due to [defendant]'s unlawful practices,' *Comcast* does not pose a barrier to class certification"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485-86 (C.D. Cal. 2012) ("Statute of limitations defenses—like **damage calculations**, affirmative defenses, and counterclaims—**rarely defeat class certification**.") (emphasis added).

9

Significantly, just recently, the District Court in *Frlekin v. Apple Inc*., 2015 U.S. Dist. LEXIS 92768, at *1-2 (N.D. Cal. July 16, 2015),[3] granted class certification of a virtually identical situation involving Apple retail store employees having to undergo security checks every time they left the store.  Apple maintained policies which are strikingly similar to those of Converse:

> **Employee Package and Bag Searches**
> All personal packages and bags must be checked by a manager or security **before leaving the store.**
> **General Overview**
> All employees, including managers and Market Support employees, are subject to personal package and bag searches.  Personal technology must be verified against your Personal Technology Card (see section in this document) during all bag searches.  Failure to comply with this policy may lead to disciplinary action, up to and including termination.
> Do Find a Manager or member of the security team (where applicable) to search your bags and packages before leaving the store.

*Id.* (Some emphasis added).  Apple also maintained similar bag search requirements, including mandating that employees open up their bags, verifying that products were purchased by comparing them with the employee's receipts, and if questionable items were found, requiring further investigation.  *Id.* at *2.  Apple argued that individualized inquiries predominated because the way its bag check policy was enforced varied store-to-store, including that managers or third-party security officers could conduct the search, some stores had off-site break rooms where bags could be kept which obviated the need for a bag check, and that the bag check process changed during the class period.  *Id.* at *3.  In opposing class certification, Apple further argued that not all employees brought bags to work, which also eliminated the need for a bag check.  *Id.* at *6.  Apple also argued that the bag check policy was not enforced at all of its stores due to managerial

---

[3] To the extent that Defendant attempts to cite Judge Alsup's granting of summary judgment in favor of the employer in *Frlekin*, to somehow bar class certification, such an argument would be misplaced.  To the contrary, the *Frlekin* case shows that this case is particularly suited for class treatment and that the issues can be decided by summary judgment, as was the case in *Frlekin*.  Further, although *Frlekin* can be used as a model upon which to litigate the instant case, in that the parties here can similarly proceed to summary judgment after the class has been certified, the facts in *Frlekin* are far different, such that the summary judgment ruling does not apply in this case.  In *Frlekin*, the employer did not have a blanket security check policy, as is the case here.  Rather, in *Frlekin*, Apple required employees to undergo security checks only if they brought bags to work.  Here, employees must all undergo security checks, including checking with their manager to ensure that they do not have a bag.  Further, all employees who wear coats, sweaters, and jackets must undergo the security check, a fact which was not present in *Frlekin*.  Thus, although the class certification order and litigation mechanisms utilized in *Frlekin* are useful in guiding this case, Judge Alsup's ultimate order on summary judgment does not apply here.

10

discretion. *Id.* at *7. Notwithstanding these purported individualized questions, the Court still granted class certification because the question of whether employees are required to be paid for time undergoing these bag checks presented a common issue: "this order finds that this generic issue overarches the entire controversy." *Id.* The Court further relied on Apple's written policies requiring a bag check every time the employee exited the store: "Apple had a state-wide written policy, which will serve as a common method of proof for all 52 California stores." *Id.*

The District Court reached the same holding in *Kurihara v. Best Buy Co.*, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007). In *Kurihara*, the employer, as in this case, had a policy requiring its hourly employees to undergo supervisor inspections upon entering and exiting the store. *Id.* at *2. The employer claimed that inspections fluctuated from day to day, including that inspections varied manager to manager and that inspections were not even performed in some instances. *Id.* at *2-3. The employer further argued that off-the-clock work was prohibited, which implied that security checks must be performed on-the-clock. *Id.* at *4. The employer also argued that, in any event, such security check time was *de minimis* and, thus, not compensable. Nevertheless, the Court also granted class certification of the security check claim:

> [D]efendant's assertions regarding the failure of its employees to properly implement the company's standard policies do not convince the court that substantial variations exist. Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class certification.
>
> **Finally, Defendants' focus on its asserted *de minimis* defense is a matter of degree rather than kind. At the bottom of the multi-factor *de minimis* inquiry is the simple question of how many hours were worked. This is an issue that defendants would be forced to litigate individually regardless of whether common questions of liability predominated.**
>
> In sum, the individualized inquiries are directed principally toward damages rather than liability.

*Id.* at *10-11 (emphasis added).

The District Court reached the same conclusion in *Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008). *Cervantez* involved another check-out case. In that case, the Court also found that "there is a common issue of law as to whether the post-shift security line time is compensable," (*Id.* at 571) and noted that:

> Like the plaintiffs in [*Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000)],

11

1

2

> Plaintiffs are under the control of their employers while in the security line at the end of the shift: they cannot choose to leave the premises without going through the line, nor can they choose to run a personal errand before going through the line.

3

4

*Id*. at 572; *see also Otsuka v. Polo Ralph Lauren Corp*., 251 F.R.D. 439, 442 (N.D. Cal. 2008)

5

(certifying security check case notwithstanding employer's argument that the amount of time

6

undergoing security check was *de minimis* and varied; "[a]nother practice is to conduct loss-

7

prevention inspections (i.e. security checks for stolen merchandise) on all employees every time

they leave the store, such as at the end of their shifts or to take lunch breaks").

8

It is also anticipated that Defendant will argue its *de minimis* defense as a reason to defeat

9

class certification.  Case law is clear that such a defense cannot be a reason to defeat class

10

certification.  *See Rai v. Santa Clara Valley Transp. Auth*., 308 F.R.D. 245, 260-61 (N.D. Cal.

11

2015) ("VTA's contention that it can assert 'unique' *de minimis* defenses against some of the

12

representative's claims is unpersuasive because as previously noted, the *de minimis* defense can

13

be resolved on a class-wide basis even if the amounts of time for which each representatives and

14

class member seek compensation differ"); *Bibo v. Fed. Exp., Inc*., No. C 07-2505 TEH, 2009 WL

15

1068880, at *4 (N.D. Cal. Apr. 21, 2009) ("FedEx also asserts that the state's rule on de minimis

16

work undermines Plaintiffs' legal claim for uncompensated pre- and postliminary activities";

17

"[t]he merits of whether Plaintiffs' claims are compensable under this law are not an appropriate

18

subject for a class certification motion"); *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 550

19

(E.D. Cal. 2010) ("Defendants' third argument about individual inquiries is that compensation is

20

not owed for *de minimis* overtime, and that whether time was *de minimis* must be calculated on a

21

fact specific basis. The need to determine whether overtime was *de minimis* does not itself

22

preclude class or collective certification."); *Jimenez v. Allstate Ins. Co*., No. LA CV10-08486

23

JAK, 2012 WL 1366052, at *20 (C.D. Cal. Apr. 18, 2012), *aff'd* (Sept. 3, 2014) ("[w]ith respect

to Defendant's *de minimis* defense, it can be addressed through representative testimony").

24

In fact, just one month ago, in the matter of *Diller v. Under Armour*, Santa Clara Superior

25

Court Case No.1-14-CV-265729, the Santa Clara Superior Court granted class certification on

26

behalf of all non-exempt retail store employees of Under Armour for the same exact security

27

check practices.  *See* Exhibit C to RJN.  As the Court held in granting class certification, "the

28

overarching common question is whether Defendants had a common bag check policy and whether the policy was lawful." *Id.* Although the Court found that issues such as the amount of time each person waited for the security check could be individualized, such issues related to damages and do not preclude class certification. *Id.*

Here, it is undisputed that all of Defendant's California retail store employees were subjected to the very same security check policy as one another, and that the security checks were to be performed in the very manner mandated by Defendant. Specifically, as shown in Defendant's own testimony, all security checks were to be done ***after*** the employee has already clocked out. (Kiefer Depo. 90:9-12 ("it is common practice that an associate would clock out and then on their way out the door, they would get their bag checked.").

Based thereon, the common question to be litigated in this case is whether such security check time is compensable under California law. Once that question is answered, class-wide liability and damages can then be determined.

Accordingly, this claim presents an ideal issue for class-wide adjudication, especially given Defendants' undisputed common policy of requiring all of Defendants' employees to undergo security checks.

### b. There Are Also Common Questions of Law and Fact As to Whether Class Members Were Denied Unfettered Rest Breaks Because of the Security Checks

As Ms. Kiefer testified, all employees must undergo a security check whenever leaving the store, including for purported "off-duty" rest breaks. (Kiefer Depo. 176:7-11, 177:2-13). Thus, these security checks would undisputedly cut into an employee's off-duty rest break, such that the employee is denied the full 10-minute rest break.[4] Courts have held that employers may not impose any limits on rest breaks, such as dictating what the employee can do during breaks, or discouraging or impeding breaks. *See*, *e.g.*, *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, (S.D. Cal. 2010) (holding that class certification of rest and meal period claims was warranted

---

[4] To the extent that Defendant argues that it maintains a 15-minute rest break, whether the security check took 5 minutes or more to cut into the employee's rest break presents a damage question. Again, such damage questions cannot defeat certification.

13

1   where the plaintiffs were required to use Nextel pagers during breaks and stay in communication

2   and breaks were not permitted until all work was finished); *Bradley v. Networkers Int'l, LLC*, 211

3   Cal. App. 4th 1129, 1144 (2012) (explaining that in Brinker, 53 Cal. 4th at 1004, the California

4   Supreme Court explained that, for an employer to satisfy its meal break requirements, "it [must]

5   relieve[] its employees of all duty, ***relinquish[] control over their activities*** and permit[] them a

6   reasonable opportunity to take an uninterrupted 30–minute break, and … not impede or

7   discourage them from doing so") (emphasis added); *Ricaldai v. U.S. Investigations Serv., LLC*,

8   878 F. Supp. 2d 1038, 2012 WL 2930474 (C.D. Cal. 2012) (applying *Brinker* to deny defendant

9   summary judgment because plaintiff could show meal breaks were denied where plaintiff

10  "offer[ed] evidence that she was implicitly trained to take working lunches, **expressly told that**

11  **personal errands were prohibited without prior authorization**, specifically directed to fill her

12  entire day in each geographic area with job duties, and correspondingly discouraged from taking

13  any time off") (emphasis added); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 442, 447

14  (N.D. Cal. 2008) (holding that class certification was warranted on rest break claim because the

15  employer's policy "discouraged" and "prevented" employees from taking rest breaks).

16      Thus, Converse's denial of duty-free 10-minute rest breaks presents a common question,

17  given that it is undisputed that all employees must undergo a security check before leaving the

18  store to take a break.  *Kurihara*, 2007 WL 2501698, at *6 ("whether Best Buy's employee

19  inspection policy was unlawful and/or interfered with its employees' entitlement to meal and rest

20  periods-is the 'dominant issue' in the case").

21          **c.      There Are Also Common Questions Of Law And Fact As To**

22                   **Whether Bonuses Should Have Been Included In The Regular**

23                   **Rate Calculation**

24      There is no dispute that Defendant did not increase its non-exempt employees' regular rate

25  of pay for purposes of overtime wages based on the Quarterly Bonuses.  This same method was

26  used by Defendant to determine the regular rate for all putative class members.  Therefore, the

27  common question that must be answered is simply whether the method Defendant used to

28

14

determine the regular rate of pay was legal or not, as admitted by Defendant's own Motion for Partial Summary Judgment. Once this question is answered, liability can be determined on a class wide basis in one fell swoop.

Courts have also consistently held that such claims are aptly suited for class treatment. *See*, *e.g.*, *Chavez v. Lumber Liquidators, Inc*., No. CV-09-4812 SC, 2012 WL 1004850, at *6 (N.D. Cal. Mar. 26, 2012) ("Zaldivar's claims are typical of the 130 non-exempt employees' claims because all were subject to the common pay practices of LLI. Zaldivar has stated that he regularly worked more than forty hours per week and that he received $12,282.87 in sales bonuses that were not incorporated in his regular rate of pay for the purposes of calculating his overtime rate."); *Faulkinbury v. Boyd & Associates, Inc*., 216 Cal. App. 4th 220, 238 (2013) ("whether the work uniform maintenance allowance and gasoline reimbursement must be included in calculating the overtime rate of pay can be decided on a class-wide basis as a legal matter based on common proof").

### 3.     Representative Plaintiff's Claims are Typical

In *Hanlon*'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. It is enough if named Plaintiff and class members share a "common issue of law or fact.'" *California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted). Under the low threshold of typicality, all that is required is that each plaintiff has an incentive to prove defendant's liability. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002).

Here, typicality is readily satisfied. The proposed representative Plaintiff seeks recovery based upon the same legal theories and factual circumstances as the Class that he represents. As shown in Plaintiff's supporting declaration, Plaintiff was required to be subjected to off-the-clock security checks, including before being permitted to take his rest breaks, during his employment with Defendant. Chavez Decl. ¶¶ 3-7. The claims in the current case rise and fall on the determination of whether employees should have been compensated for time spent undergoing

15

off-the-clock security checks.  Based on the same evidence discussed above, Plaintiff and the putative class members were all subjected to the very same common policies and practices.

Similarly, Plaintiff's regular rate was calculated according to the same formula as was applied to the rest of the class he seeks to represent.  Chavez Decl. ¶¶ 8-9.  Therefore, this claim will rise and fall on whether Defendant's admitted failure to include the Quarterly Bonuses into the regular rate of pay was legal.  There is no dispute that the same methodology was applied to all members of the putative class.

For this reason, Plaintiff's claims are typical with those of the Class members.

### 4. The Adequacy Requirement Is Met

To determine whether the class representation meets the standard of Rule 23(a)(4), two questions are asked:  "(1) Do the representative Plaintiff[s] and their counsel have any conflicts of interest with other class members, and (2) will the representative Plaintiff and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

### a. Plaintiff is an Adequate Representative

As established above, Plaintiff shares common interests with the defined Class, has claims typical of class members' claims, and is fully prepared to take all necessary steps to fairly and adequately represent the Class he represents.  Chavez Decl.  ¶¶ 10-11.  No conflicts of interests exist and Plaintiff will continue to adequately and vigorously prosecute this action.  *Id.*  Plaintiff has agreed to abide by all of the necessary duties of a class representative, including assisting counsel in the litigation.  *Id.*  Accordingly, Plaintiff is an adequate representative.

### b. Competent Class Counsel

As detailed in their declarations, Plaintiff's Counsel are experienced class action litigators who have litigated many wage and hour class actions and/or have been certified as class counsel in numerous other class actions, particularly wage and hour class actions.  (Lee Decl., ¶¶ 7-14; Declaration of Nick Rosenthal ("Rosenthal Decl.") ¶¶ 4-5; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L. Marder ("Marder Decl.") ¶ 5).

Plaintiff's Counsel have diligently litigated this case, and will continue to do so.

16

1  Plaintiff's Counsel have taken the depositions of Defendant's 30(b)(6) witness, propounded and

2  responded to discovery, and have pursued matters in law and motion as deemed necessary.  (Lee

3  Decl. ¶ 13; Hyun Decl. ¶ 8; Rosenthal Decl ¶ 7).  Plaintiff's Counsel's only relationship with

4  Plaintiff is the attorney-client relationship in this matter.  (Lee Decl. ¶ 14; Hyun Decl. ¶ 9;

5  Rosenthal Decl ¶ 8).  Accordingly, Plaintiff's Counsel are adequate and will continue to

6  vigorously prosecute this action on behalf of the class.  (Lee Decl. ¶¶ 7-14; Hyun Decl. ¶ 7;

7  Rosenthal Decl. ¶¶ 6-8).

8  **B.     The Predominance Requirement of Fed. R. Civ. P. 23(b)(3) is Met**

9  Rule 23(b)(3) requires two separate inquiries:  (1) do issues common to the class

10  "predominate" over issues unique to individual class members, and (2) is the proposed class

11  action "superior" to other methods available for adjudicating the controversy.  *See* Fed. R. Civ. P.

12  23(b)(3).  Here, the requirements of Rule 23(b)(3) are satisfied.

13  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

14  cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (citation omitted);

15  *see also Avilez v. Pinkerton Gov't Serv.*, 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) (explaining

16  that predominance is met if the focus is on the defendant's conduct, even if individualized

17  defenses may apply); *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052, *17-18 (C.D. Cal. 2012);

18  *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 447 (N.D. Cal. 2008).  In this case, it is

19  undisputed that Defendant has uniform practices and policies which resulted in Labor Code

20  violations.  In other words, the claims are predicated on common off-the-clock security check and

21  calculation of regular rate policies and practices making Plaintiff's claims ideally suited for class

22  action treatment.

23  This undisputed evidence shows that Defendant's operations were standardized as far as

24  security checks and calculation of the regular rate of pay – all employees had to undergo off-the-

25  clock security checks and were paid overtime wage rates without having the Quarterly Bonuses

26  factored in.  Thus, Plaintiff's claims are ideally suited for class treatment.  *See*, *e.g.*, *Abdullah*,

27  731 F.3d at 966-67 (holding that common questions predominated in claim for Labor Code

28  violations because liability and damages could be adjudicated by reliance on the employer's

17

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1    records); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (same); *McKenzie v.*

2    *Federal Exp. Corp.*, 275 F.R.D. 290, 300 (C.D. Cal. 2011) (same).

3         Here, Defendant has openly represented that there are over 1,000 individuals who were

4    subject to the security check policy at issue, and hundreds of employees who received Quarterly

5    Bonuses but which were not factored into their regular rate of pay for purposes of overtime

6    wages.

7         Thus, as to the security check claim, the only question that needs to be answered in order

8    to determine liability for the Class is whether the time spent by employees waiting for and

9    submitting to security checks should have been compensated.  If the time is not compensable,

10   then Plaintiff and the Class have no claim.  However, if the time in question is compensable, then

11   Plaintiff and the Class are entitled to an award.

12        The same logic applies to Plaintiff's claim regarding the regular rate violation.  There was

13   a standard company policy that determined how an employee's regular rate was calculated that

14   was applicable to all putative class members which did not factor in the Quarterly Bonuses.

15   Therefore, whether these employees were underpaid as a result of the regular rate being

     miscalculated can be answered by simply looking at whether such a calculation method was legal.

16        **C.     A Class Action is the Superior Method for Adjudication**

17        Class treatment is clearly superior to any other method of resolving Plaintiff's claims.

18   *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004).

19        Because Plaintiff's claims are based on common policies and practices, these claims can

20   be most efficiently litigated on a class-wide basis.  The alternative would be the unrealistic filing

21   of hundreds, or even thousands, of individual claims, posing the serious disadvantages pointed

22   out by the *Sav-On* court.  Because the putative class members are hourly employees, with

23   relatively modest individual claims and limited resources, there is a strong likelihood that

24   individual actions would never be brought.  *See Local Joint Exec. Bd. of Culinary/Bartender*

25   *Trust Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001) (superiority requirement met where class

26   members would recover, at most, about $1,330).  Moreover, many class members might not bring

27   individual actions out of fear of retaliation.  *See O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S.

28

                                                    18

1   Dist. LEXIS 49829, at *11 (S.D. Cal. 2008) ("federal courts have widely recognized that fear of

2   retaliation for individual suits against an employer is a justification for class certification in the

3   arena of employment litigation") (emphasis in original).  Finally, this action is manageable and

4   well-suited for class certification where Defendant's own payroll records, including dates of

5   employment and rates of pay, can be used to show the violations and measure damages.

6        The factors discussed above support a finding of superiority pursuant to Rule 23(b)(3),

7   and there are no factors weighing against it, as class members have no adverse individual

8   interests.

9   **V.      A CLASS-WIDE TRIAL IS MANAGEABLE**

10       "The amount of damages is invariably an individual question and does not defeat class

11  action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  Here, the parties can

12  file cross motions for summary judgment to decide the issue of whether Defendant's security

13  checks should be deemed as hours worked under California law and whether Defendant's method

14  for calculating the regular rate of pay is legal under California law.  If this Court rules in

15  Defendant's favor, then this case is over.  If this Court rules in Plaintiff's favor, however, the

16  parties can proceed to the damage phase, in which the parties can agree to a representative sample

17  to extrapolate to the class.  *Jimenez*, 2012 WL 1366052, at *20.

18  **VI.     CONCLUSION**

19       For the reasons stated above, Plaintiff's Motion for Class Certification should be granted.

20  Dated: May 16, 2016                    DIVERSITY LAW GROUP, P.C.

21

22                                         By:/s/ Larry W. Lee

23                                         _____
                                           LARRY W. LEE
24                                         NICHOLAS ROSENTHAL
                                           Attorneys for Plaintiff and the Class
25

26

27

28
                                    19