Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
Kristen Agnew (State Bar No. 247656)
kagnew@diversitylaw.com
**DIVERSITY LAW GROUP, A Professional Corporation**
515 South Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

WILLIAM L. MARDER, ESQ. (CBN 170131)
Polaris Law Group LLP
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333
Email: bill@polarislawgroup.com

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
HYUN LEGAL, APC
515 South Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHAVEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>CONVERSE, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 15-cv-03746-NC<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:         September 7, 2016<br>Time:        1:00 p.m.<br>Courtroom: 7, 4th Floor<br>Judge:       Hon. Nathanael M. Cousins |

1

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFF CAN EASILY MEET THE REQUIREMENTS OF 23(A) ..........................2

   A. Defendant's Written Policy Requires Searches To Be "At The Point Of Exit" ..................2

   B. The Testimony Of Defendant's PMK Is Contradictory And Illogical ................................3

   C. Deposition Testimony Of Defendants' Declarants Proves Any Security Checks Occurring "On the Clock" Were Being Performed In Violation Of Company Policy .................5

   D. Where All Employees Are Subject To An Unpaid Security Checks, The Class Must Be Certified ...............................................................................................................................8

III. PLAINTIFF CAN EASILY MEET THE REQUIREMENTS OF FRCP 23(b) ................10

   A. In Arguing That The Time At Issue Is *De Minimis*, Defendant Intentionally Ignores The Full Scope Of Plaintiff's Claim ...........................................................................................10

   B. Defendant's Reliance On *De Minimis* Is Bizarre Considering It Does Not Apply The Full *De Minimis* Test ...............................................................................................................10

   C. Whether The Time At Issue Was *De Minimis* Is A Classwide Issue ...................................11

   D. The Putative Class Was Unquestionably "Subject to the Control" Of Defendant ............12

   E. Defendant's Rest Break Argument Mixes Apples With Oranges ......................................14

   F. A Class Action Is The Only Practical Method For Fair And Efficient Adjudication Of The Class' Claims ..............................................................................................................15

IV. PLAINTIFF ALSO SEEKS KRISTEN AGNEW TO BE CERTIFIED AS CLASS COUNSEL .........................................................................................................................15

V. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvarado v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 48935 (N.D. Cal. June 18, 2008) .......13

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, (S.D. Cal. 2010) ........................................................14

*Frlekin v. Apple Inc.*, 2015 U.S. Dist. LEXIS 151937 (N.D. Cal. July 16, 2015) at *10 ......................12

*Green v. Federal Express Corp.*, 614 Fed. App'x 905 (9th Cir. 2015) ..................................................14

*In re Autozone, Inc.*, *Wage & Hour Empl. Practices Litig.*, 289 F.R.D. 526 (N.D. Cal. 2012) .............9

*Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1983) ...............................................................10

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 612 (C.D. Cal. 2015)...1, 3, 9, 11

*Ogiamien v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 22128 (C.D. Cal. Feb. 24, 2015)......................13

*Ortiz v. CVS Caremark Corp.*, 2013 U.S. Dist. LEXIS 169854 (N.D. Cal. Dec. 2, 2013) ..........................10

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008)................................11, 15

*Quinlan v. Macy's Corp. Serv.*, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. Aug. 22, 2013), *11 .......12

*Reed v. Cnty. Of Orange*, 266 F.R.D. 446 (C.D. Cal. 2010) .................................................................12

*Scott-George v. PVH Corp.*, 2015 WL 7353928, at *6 (E.D. Cal. Nov. 20, 2015) .....................1, 3, 11

*Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014) ......................................................9

*Tan v. GrubHub, Inc.*, 2016 U.S. Dist. LEXIS 37200 (N.D. Cal/ Mar. 22, 2016) ................................13

**State Cases**

*Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1144 (2012) ............................................14

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000) ..............................................................12

## I. INTRODUCTION

Defendant, desperate to find a miracle escape hatch to avoid inevitable class certification, focuses on the fact that the security check policy at issue does not specifically state that the security check are to be done "off the clock." The Court should disregard this argument for a number of reasons. First, it is important to keep in mind that the policy at issue states that security checks must be at the front of the store, and that at every location the employee time clocks are at the back of the store in the break room. Therefore, practically speaking, if company policy is being followed, employees must be clocked out before a security check takes place. Otherwise they would have to undergo checks at the front, then walk to the back to clock out, then walk to the front again to exit. Obviously, this would undermine the entire purpose of the checks, as employees would be walking through the store twice after having undergone the checks, and thereby allowing then additional opportunities to steal. The fact is, the policy states checks should occur at the "point of exit" which as a matter of practice will result in exclusively off-the-clock checks.[1] Therefore, it really is not relevant that the policy does not explicitly state that the security checks are to be off-the-clock.

Second, Defendant's PMK conceded that it was "common practice" that checks occur off-the-clock at the front of the store. So, while Defendant scrambles to find examples of times when this did not happen, the company's own representative admitted that off-the-clock security checks were standard procedure.

Third, Defendant's own declarations demonstrate that off-the-clock security checks were the norm. Defendant attached 35 declarations to its Opposition from current or former employees. 30 of these declarations – from declarants chosen by Defendant - conceded that all checks were done after the employee had clocked out. Plaintiff deposed the other five declarants and without fail each of them conceded that standard practice was for security checks to be performed off the clock. Ultimately, Defendant relies upon isolated incidents in which company policy has been violated to try and avoid class certification. The Court should not condone this.

Defendant then turns to *de minimis*, but this argument also fails. Simply claiming that the

---

[1] As shown herein, this logic is also supported by case law - *Scott-George v. PVH Corp.*, 2015 WL 7353928, at *6 (E.D. Cal. Nov. 20, 2015) and *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 612 (C.D. Cal. 2015).

time spent waiting for and undergoing security checks is very short does not mean the *de minimis* rule applies, as the actual test for determining whether work is *de minimis* is multi-pronged and does not even involve the amount of time spent on a daily basis. Further, whether the time at issue is *de minimis* is a merit-based question that cannot pose as an obstacle to certification.

Defendant then posits the rather bizarre argument that employees waiting for and undergoing security checks were not under the "control" of their employer during that time. There is no dispute that the employees were not free to leave while waiting for and undergoing security checks, that the company was aware that employees were incurring this time spent, and in fact that the security checks benefitted the Defendant. Therefore, there cannot truly be any serious dispute that the putative class was under the control of Defendant during the time in question. Further, this is yet another merit-based question that is improper to adjudicate on a class certification motion.

## II.    PLAINTIFF CAN EASILY MEET THE REQUIREMENTS OF 23(A)

Defendant's entire argument regarding 23(a) centers on the idea that in fact the security checks were not always off-the-clock. Thus, Defendant argues, there is no "common question" as to the putative class if not all putative class members always were subjected to off-the-clock searches. However, the overwhelming evidence in this case is that there was a policy in place requiring employees to undergo searches at the front of the store, where it would, practically speaking, be impossible to have them be on the clock. Further the evidence demonstrates that, the policy aside, in practice, virtually all searches were off-the-clock. Indeed, the few searches that occurred on the clock were performed in violation of Defendant's own company policy.

### A.    Defendant's Written Policy Requires Searches To Be "At The Point Of Exit"

Defendant dismisses the importance of the written policies by focusing exclusively on the fact that they do not specify whether the searches must be on the clock or of the clock. However, what Defendant omits is that the policy demands that any searches be performed "at the point of exit." There is no dispute that there was only one entrance/exit used by employees, located at the front of the store. There is also no dispute that the time clock used by all employees at every location is in the employee break room at the back of the store. Realistically speaking, if the searches must be performed at the front of the store ("point of exit"), it is not logistically feasible that the searches could be on the clock. To remain on the clock for such searches would require an employee to walk

to the front of the store, wait for the search to occur, then walk through the store to the back, clock out, then walk back through the store again and exit. This would completely undermine the very purpose of the searches - which is to search employees as they leave and do not have another opportunity to steal items from the store – by having them walk twice through the store after the search has occurred. Indeed, that the policy contemplates that the searches will be off-the-clock at the front of the store is plain based upon what is not discussed; there is no mention of an employer needing to walk to the back after the search, no mention of what an employee should do with any bags they may have when walking to the back, nor any mention of whether they should be accompanied or watched by a manager when walking to the back (or then to the front after clocking out).

Again, Converse's arguments were expressly rejected by the District Courts in *Scott-George*, 2015 WL 7353928, at *6, and *Moore*, 311 F.R.D. at 612. The employer in *PVH* argued that individualized issues existed because the employer contended that employees were compensated for security checks. The policy, however, stated that the security checks were to be performed at the exit. The District Court noted that "[t]he policy requires that the bags be searched upon entering or exiting the store. Unless Defendant has found a way to clock employees in at the entrance of the floor, then the policy is to search bags prior to and after employees have clocked in and out." *Id.* at *6.

Likewise, the District Court rejected the same argument in *Moore*, 311 F.R.D. at 612. There, the employer had the policy as Converse; namely, that searches were to be conducted at the point of exit. The employer in *Moore* also argued that enforcement of the policy varied, such that some searches were conducted on the clock. The Court rejected this argument: "[h]aving carefully considered Ulta's argument that its policy is not uniformly carried out, (see Opp. at 21–24), the court is persuaded that, to the extent there are minor deviations from the policy at the store level, they have not yet been shown to predominate over the critical common question: whether the application of defendant's written exit inspection policy results in employees not being properly compensated for their work." *Id.* at 612.

### B.     The Testimony Of Defendant's PMK Is Contradictory And Illogical

Defendant relies upon the testimony of its PMK to try and explain that the policy in fact

should not be interpreted according to its plain meaning.  First, as an initial point, even Defendant concedes that "common practice" was for employees to clock out, get searched at the front of the store, and then leave.  Plaintiff maintains that this testimony in itself warrants class certification.  Second, Defendant's emphasis on the PMK's testimony stating that security checks can be performed on or off the clock completely ignores the fact that the written policy explicitly states that such checks are to be done at the "point of exit."  As explained in the section above, if the checks are being done at the front of the store, it is both practically and logically impossible that employees were undergoing them on the clock based on the location of the time clocks.

      Where the PMK's testimony becomes truly absurd is where she attempts to define the term "point of exit" to actually mean "anywhere."  In other words, despite that the policy articulates that searches are to be performed "at the point of exit", the PMK states that they can actually occur anywhere inside the store.  Plaintiff posits that if the searches really could take place anywhere inside the store, the policy would say they could take place anywhere inside the store.  Indeed, there is substantial evidence that in fact the PMK was not being fully candid on this point during her deposition.  For example, the store manager in the Vacaville location, Amanda Amato, testified at deposition that she performed security checks on the clock at the back of the store until approximately three months before the date of her deposition. (Deposition of Amanda Amato ("Amato Depo."), 21:11-14).[2]  She changed the location of the security checks because she was specifically told by Defendant's Risk Management team that all security checks were to occur at the front entrance/exit of the store (i.e., the "point of exit"). (Amato Depo. 21:15-22, 22:7-10).  Further, Ms. Amato testified that Defendant's Risk Management team specifically told her that company policy was to have the security checks at the front entrance/exit of the store. (Amato Depo. 22:18-21).  Risk Management also articulated to Ms. Amato that even where an employee did not have a bag and simply required a visual inspection, company policy dictated that these should occur at the front entrance/exit of the store as well. (Amato Depo. 23:21-24:5).  Notably, once Ms. Amato moved the security check location to the front of the store, Ms. Amato admits that the checks became off-the-clock, but at the same time, the security checks were being conducted in compliance with

---

[2] The citations to the depositions of Amanda Amato, Franciso Badillo, Alcina Rosas, Akiyo Saliot and Jared Neidholt are attached as exhibits to the Supplemental Declaration of Nick Rosenthal.

Defendant's mandatory policy. (Amato Depo. 38:16-39:12). Therefore, Ms. Amato's testimony that she was specifically told by Defendant that she was to move the security check location from the back of the store to the front entrance/exit as per company policy directly contradicts the PMK's testimony that the "point of exit" means anywhere in the store.

### C. Deposition Testimony Of Defendants' Declarants Proves Any Security Checks Occurring "On the Clock" Were Being Performed In Violation Of Company Policy

Defendant included the declarations from five employees stating that they performed or underwent security checks "on the clock." The value of these declarations is slight considering that Defendant also submitted *30 other declarations* from employees that admitted that *all checks were performed off the clock*. Nevertheless, Plaintiff deposed these five individuals and elicited testimony from each of them demonstrating that any of these "on the clock" checks were being performed in a manner contradictory to company policy.

- **Amanda Amato:** Defendant cited to Paragraph 12 of Ms. Amato's declaration where she states that she has conducted security checks at the back of the store and on the clock "for almost the entire time" she has been manager of the Vacaville location. This is an extremely artfully worded declaration. As explained in II.B., Ms. Amato had been told three months prior her deposition by Defendant's Risk Management department that company policy mandated that security checks occur at the front entrance/exit of the store. (Amato Depo. 21:11-14, 21:15-22. 22:7-10, 22:18-21). So assuming it is true that for most of her tenure she performed checks at the back of the store and on the clock, it is not true - despite her use of the present tense - that this is still the case. Further Ms. Amato testified that once security checks started being performed at the front of the store, they were off-the-clock. (Amato Depo. 25:16-18, 39:3-12). Indeed, Ms. Amato testified that upon switching the location of the checks to the front, she did not even consider having them be on the clock. (Amato Depo. 39:8-12). Therefore, Ms. Amato's declaration omits extremely critical facts: that she was informed by Defendant that performing checks at the back was in violation of company policy, that she then switched procedures such that checks were performed at the front of the store pursuant to Defendant's company-wide policy, and that once she switched the checks such that they were in the front of the store they were off-the-clock.

- **Francisco Badillo:** Defendant cited to Paragraph 12 of Mr. Badillo's declaration where he states that he conducts security checks while employees are on the clock. Again, critical

5

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
Case No. 15-cv-03746-NC

details were left out of Mr. Badillo's declaration. Specifically, he revealed during his deposition that the *__only__* time security checks are not performed at the front of the store is during the security check that occurs when the store is closing. (Declaration of Francisco Badillo "Badillo Depo.", 24:9-20). The reason for this is that the light switch for the entire store is located at the back of the store, meaning that when the store is closing the lights are switched off at the back and it would be impossible to perform security checks at the front of the store in darkness. (Badillo Depo. 26:14-27:1, 39:17-24). On store closing shifts, he testified there would be only two employees present. (Badillo Depo. 20:11-12). However, Mr. Badillo also testified that all other security checks, other than those performed at the time of the store closing, are performed off-the-clock at the front of the store. (Badillo Depo. 23:23-24:2). Further, he stated that had the light switch been at the front of the store such that security checks could have been performed at the front and off the clock, that is where he would have performed them. (Badillo Depo. 39:25-40:7). He also testified that security checks performed at the front of the store were always off the clock because it was a "hassle" to have employees undergo the check at the front, then walk to the back to clock out, then walk back to the front of the store to exit. (Badillo Depo. 40:11-41:2).

- **Alcina Rosas:** Defendant cited to Paragraph 12 of Ms. Rosas' declaration where she states that managers at her store perform security checks while employees are on the clock. However during her deposition, Ms. Rosas, who is an associate at the same store at which Mr. Badillo works, testified that only those security checks performed at the time of closing were performed on the clock at the back of the store.[3] Ms. Rosas testified that for all searches other than during closing, security checks are performed at the front of the store, and off-the-clock. (Deposition of Alcina Rosas "Rosas Depo.", 25:21-26:5, 33:2-5). Ms. Rosas admitted that "point of exit" as it appears in Defendant's security check policy means the front entrance/exit and that as a result all searches performed anywhere other than the front entrance/exit were in violation of company policy. (Rosas Depo. 33:23-34:7, 44:15-22).

- **Akiyo Saliot:** Defendant cited to Paragraph 9 of Ms. Saliot's declaration where she

---

[3] Considering that she works at the Milpitas location with Mr. Badillo, presumably the reason for the on the clock searches at the back of the store is that the light switch is at the back of the store. However Ms. Rosas did not testify on this point and she did not indicate any understanding of why closing searches were performed at the back of the store.

states that she will sometimes perform security checks of employees at the back of the store while they are on the clock. Once again, this declaration omits critical facts and is misleading. Specifically, Ms. Saliot worked at the Milpitas location with Mr. Badillo and Ms. Rosas, where the light switch was at the back of the store, causing checks during closing shifts to be at the back of the store. (Deposition of Akiyo Saliot "Saliot Depo.", 31:11-15). What Defendant omitted to disclose, however, is that all searches performed at any time other than closing shifts were off-the-clock. (Saliot Depo. 52:12-19, 53:5-11).

- **Jared Neidholt:** Defendant relied on Paragraph 12 of Mr. Neidholt's declaration where he states "I conduct bag checks while employees are **still on-the-clock**." This is directly contradicted by Mr. Neidholt's deposition testimony, in which he admits that daytime security checks are indeed **off-the-clock**:

> **Q. So would you agree that the daytime check, that is off the clock?**
> **A. Yes.**

(Deposition of Jared Neidholt ("Neidholt Depo.") 54:20-55:12) (emphasis added). Further, for closing shift security checks, Mr. Neidholt admitted that these checks were also performed off-the-clock, depending on the circumstances. (Neidholt Depo. 55:13-56:11). Thus, Mr. Neidholt admitted that his Declaration was not accurate:

> Q. So I want to direct your attention, Mr. Neidholdt, to paragraph 12 of Exhibit 301. Do you see the first sentence?
> A. Yep.
> **Q. "I conduct bag checks while employees are still on-the-clock." That sentence is not entirely true based on your testimony here today, correct?**
> **THE WITNESS: That is correct.**

(Neidholt Depo. 65:20-66:5) (emphasis added). Thus, Mr. Neidholt openly misrepresented in his declaration security checks were performed at the location at which he worked. In fact, only a very limited proportion of security checks are performed off the clock, not all of them as his declaration implies.

Therefore, a review of the deposition testimony of the five declarants who submitted declarations stating that security checks were done on the clock reveals that when such searches occurred, they were against company policy. Amanda Amato was specifically told by Defendant that she was violating company policy by performing searches at the back of the store, at which point she started performing them at the front of the store and as a result they were off the clock. Francisco Badillo, Alcina Rosas, and Akiyo Saliot all work at the same Milpitas location for Defendant where

there was an anomaly in that the light switch for the store was in the back, meaning closing shift security checks were performed at the back of the store on the clock for this one store. All other searches were admittedly performed off the clock. Additionally, these searches were still in violation of Defendant's written policy. Regardless, class certification cannot be denied because at one of Defendant's 20 locations a small percentage of searches were performed on the clock due to a logistical issue at that particular location. Finally, Jared Neidholdt made critical misrepresentations in his declaration as to the frequency of on the clock security checks.

### D. Where All Employees Are Subject To An Unpaid Security Checks, The Class Must Be Certified

There is no dispute in this case that all employees were subject to Defendant's security check procedures before leaving the store. If employees had a bag, it was searched. If they did not, they still had to undergo a visual inspection before they could leave. Defendant has been able to point to only extremely isolated incidents in which, ***due to a violation of company policy***, a few employees at very specific times had their security checks on the clock. Overwhelmingly, employees adhered to a company policy that security checks were to occur at the front of the store, which practically speaking precluded them from clocking out after the checks. After all, of the 35 declarations from Defendant's cherry-picked group of declarants, 30 of them explicitly stated in their declarations that all security checks were off the clock. The other 5, as explained in the section above, were acting in violation of company policy in the rare instances when security checks were on the clock (notably, 3 of the 5 all worked in the same store where due to a technical issue certain checks could not be performed at the front of the store). In light of the universality of off-the-clock checks, this case is directly in line with numerous other security check cases that have been certified. *Kurihara*, *Frlekin*, *Otsuka*, *Miranda*, *Cervantez*, and *Diller* are all on point in that there was a company policy that resulted in employees submitting to security checks while off the clock. In many of these cases, the policy did not specifically contain the magic words that the checks were to be "off the clock", yet the class was certified nonetheless. Where there is a policy, such as the one here, that in practice means the searches will be performed off-the-clock, then it really does not matter whether the policy itself explicitly states that the searches must be off the clock. For instance, in *Diller*, the court ruled that the class could be certified despite the fact that "it is not clear from the language itself whether the security check itself must occur while on the clock." (Order, p. 7). Similarly, in *Moore v. Ulta*, 311

F.RD. 590 (C.D. Cal. 2015), the court was presented with evidence from the defendant that the policy did not state one way or the other whether the security checks were to be on or off the clock and numerous employee declarations stating that checks were performed on the clock. *Id*. at 601-602. Nevertheless, the *Moore* court found that there were common questions among the class because they were all subject to the same policy and granted certification. *Id*. at 603. Ultimately, Defendant's position, that because the policy does not explicitly use the phrase "off-the-clock," the policy could not possibly mandate off-the-clock checks, relies upon an extremely juvenile form of logic that should be dismissed by the Court.

Converse incorrectly analogizes this case to three cases where class certification was denied: *Stiller v. Costco Wholesale Corp.*, *Ortiz v. CVS Caremark Corp.*, and *In re AutoZone, Inc.* Each of these cases is easily distinguishable because the work time in question in each of those cases could easily have been performed on the clock and there was no policy that in practice automatically resulted in unpaid work time. In *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014) as Defendant correctly points out, the court found that the policies only "sometimes" operated in such a way that if an employee were following them they would be forced to work any time off the clock. *Id.* at 624-625. Here, however, it really cannot be disputed that where an employee follows the company policy, they will automatically work unpaid time. It was not practically possible to perform on the clock security checks at the front of the store where the time clocks are at the back of the store. Therefore, *Stiller* is simply irrelevant to the case at hand.

In *In re Autozone, Inc.*, *Wage & Hour Empl. Practices Litig.*, 289 F.R.D. 526 (N.D. Cal. 2012) the court denied class certification because of the significant evidence that the company was never even aware of the off-the-clock work supposedly being performed and that to the extent it even occurred, the reasons for such work occurring differed within the class. *Id.* at 539. Again, in the instant matter the company policy when viewed as a whole mandated that all employees be subject to a security check when leaving the store that resulted in the uncompensated work time in question. Further, as shown in Plaintiff's moving papers, Defendant's own PMK admitted that it was common knowledge and practice that the security checks were performed off-the-clock, which clearly points to Defendant's own knowledge of this very issue. It would be completely illogical for Defendant to claim that it did not know this work was being performed.

Defendant then blatantly misrepresents the court's ruling in *Ortiz v. CVS Caremark Corp.*, 2013 U.S. Dist. LEXIS 169854 (N.D. Cal. Dec. 2, 2013).  The alleged unpaid time at issue in *Ortiz* was for when employees would deliver product from one store to another, which was an activity that not every employee engaged in and was often on-the clock. *Id*. at *31-32. ("However, there is evidence in the record that some stores required that [deliveries] be performed while on the clock.")  CVS also had an explicit policy that the deliveries were to be compensated, and that time records can be changed if necessary in order to ensure the time is paid.  *Id.* at *31.  Therefore, *Ortiz* is a far cry from the instant case where the policy required *all* class members to undergo mandatory off-the-clock security checks each and every work shift.

### III.     PLAINTIFF CAN EASILY MEET THE REQUIREMENTS OF FRCP 23(b)

#### A.     In Arguing That The Time At Issue Is *De Minimis*, Defendant Intentionally Ignores The Full Scope Of Plaintiff's Claim

Defendant repeatedly belittles the scope of Plaintiff's claim by focusing on the amount of time the actual security checks themselves took and ignoring the amount of time employees spend waiting for a manager to be available in order to perform the check.  The true scope of Plaintiff's claim is from the moment the employee is at the front of the store and ready to leave to the time the manager actually performs the check on them and permits them to exit.  Thus, Defendant's constant exhortations that the security checks were only a "couple seconds" completely miss the point.  The issue is how much time elapsed from the time the employee was at the front and ready to leave, waits for a manager to come to the front, waits for other employees also at the front to be checked, and then undergoes the check themselves.

#### B.     Defendant's Reliance On *De Minimis* Is Bizarre Considering It Does Not Apply The Full *De Minimis* Test

Defendant keeps on harping on the potentiality of the time at issue being *de minimis*, but fails to actually perform the proper analysis to determine whether *de minimis* is applicable. Defendant omits that the *de minimis* test involves **three** prongs: "(1) the practical administrative difficulty of recording additional time; (2) the aggregate amount of compensable time; **and** (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1983).  Defendant does not actually engage in an analysis of any of the prongs, and instead essentially says "sometimes the security checks were quick" as support for its contention about *de minimis*.

In fact, a real analysis of the test established in *Lindow* demonstrates that *de minimis* is not

applicable based on the facts of this case.  As for the first prong, Defendant could easily, if it actually wanted, make sure that the security check time was compensated by simply changing the policy to mandate that security checks were to be on the clock.  For example, Defendant could place its employee time clocks to where the security checks take place with the employees clocking out immediately after undergoing the security check.  On the second prong, Defendant's contentions that sometimes security checks did not last long still does not answer the relevant question, which is how much time ***in total*** has gone unpaid.  That occasionally the security checks may have been very quick does not provide an answer to the second prong.  On the third prong, there can be no dispute that the unpaid security checks were "regular", as they occurred every time an employee desired to leave the store premises.

### C.     Whether The Time At Issue Was *De Minimis* Is A Classwide Issue

Further, Defendant's argument that the time worked off the clock is *de minimis* is far premature.  Such a determination can only be made after the class is certified.  *Moore*, 311 F.RD. at 617 ("In short, although there may be some *de minimis* questions that require analysis tailored to specific subclasses, the relevant questions are still common ones that predominate over any individualized issues with respect to each subclass. Nonetheless, even without subclasses, these individual questions will arise, if at all, only after significant common questions of law and fact have been answered—such as whether clocking out before an inspection is required, whether employees are under the control of Ulta while they wait for exit inspections, and whether defendant has waived the *de minimis* defense."); *Scott-George v. PVH Corp.*, 2015 U.S. Dist. LEXIS 157410, at *28 ("Next, even assuming the *de minimis* defense applies, the question of whether it is a valid defense is a common question that will generate a class-wide answer. Moreover, should the question arise, ***it will arise in the damages context***.") (Emphasis added); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) ("while defendants are correct that the application of the *de minimis* rule might require inquiries into the individual experiences of class members, these individual questions will arise ***only after*** significant common questions of law and fact have been answered, ***and may not arise at all in the liability context***") (emphasis added).

Defendant fails to sufficiently refute any of the cases cited to by Plaintiff on the *de minimis* issue in Plaintiff's Motion.  Defendant focuses on the fact that many of the cases were not about unpaid time due to security checks.  However, it really does not matter what the reason is for the

unpaid time in those other cases, what matters is that the courts in all of them determined that whether the time at issue was *de minimis* was not to be decided at the class certification stage as it is a merit-based question.

The two cases Defendant cites to in support of its *de minimis* argument, *Reed* and *Quinlan*, are both inapplicable.  In *Reed v. Cnty. Of Orange*, 266 F.R.D. 446 (C.D. Cal. 2010), the court held that there were too many individualized issues based on the different positions of the putative class members and the ***different types of off-the-clock work*** done by the putative class.  *Id.* at 453-455.  Here, of course, the position of a putative class member is irrelevant – everyone was subject to the same policy that caused them to perform the exact same type of work off the clock.  In *Quinlan v. Macy's Corp. Serv.*, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. Aug. 22, 2013), *11, the Court ruled that there was no common question amongst the putative class because the employer's policy did not require employees without bags to undergo any sort of search.  In the instant case, obviously, Defendant's policy applied to all employees, regardless of whether they brought a bag to work or not, and Plaintiff is not seeking compensation for any time other than that spent waiting for and undergoing the security check process.

**D.     The Putative Class Was Unquestionably "Subject to the Control" Of Defendant**

Defendant then suggests that time spent undergoing the security check process may not be time "suffered or permitted to work" by Defendant.  This is a merit-based argument that is completely inappropriate for class certification.  In other words, this is an issue that can be decided in one fell swoop for the entire class.  Notwithstanding, under California law, a plaintiff seeking wages for unpaid work time need only show that they were under the "control" of the employer in order to be owed compensation, whether or not the employee is actually required to work.  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000) ("Under California law, it is only necessary that the worker be subject to the 'control of the employer' in order to be entitled to compensation").  In other words, the employee does not need to be actually "working" to be entitled to wages.  Indeed, Judge Alsup specifically described this distinction in the *Frlekin* summary judgment decision, stating the "California Supreme Court has held that the two phrases –  'subject to the control of an employer' and 'time the employee is suffered or permitted to work' — are 'independent factors, each of which defines whether certain time spent is compensable as hours worked.'  See *Frlekin v. Apple Inc.*, 2015 U.S. Dist. LEXIS 151937 (N.D. Cal. July 16, 2015) at *10.  As Judge Alsup further held, the "control

12

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**Case No. 15-cv-03746-NC**

theory of liability requires proving two elements. The first is that the employer restrains the employee's action during the activity in question. The second is that the employee has no plausible way to avoid the activity; put differently, the activity must be mandatory and not optional at the discretion of the worker." *Id*. Therefore, as Plaintiff in this matter has already demonstrated that the putative class was required to undergo security checks in every instance and was not free to leave beforehand, there can be no dispute that they were under Defendant's "control."

Thus, even if the employees were not "suffered or permitted to work" by Defendant as part of the security check, Plaintiff and the class members can still prevail under the "control" theory established under California law. After all, Defendant mandated that all class members undergo security checks, restrained the employees from leaving the store prior to being checked, and had management perform these searches. Therefore, Defendant cannot possibly claim that the employees were not under Defendant's control.

Further, Defendant's reliance upon *Ogiamien v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 22128 (C.D. Cal. Feb. 24, 2015) is completely misplaced. In *Ogiamien*, the plaintiff conceded that the security check policy applied only to employees who actually brought bags to work. *Id*. at *9. Here, it is agreed by both parties that the security check policy applied to *all* employees; even if an employee did not have a bag they still needed to wait to be checked out by a manager before they could leave the store.

Defendant's citation to *Alvarado v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 48935 (N.D. Cal. June 18, 2008) is also not persuasive. *Alvarado* is a ruling on a Motion for Summary Judgment and goes through a thorough analysis of the *de minimis* test. *Id.* at *7-13. Here, there is a class certification motion before the Court and Defendant has done no analysis whatsoever of the *de minimis* factors.

Similarly, Defendant's citation to *Tan v. GrubHub, Inc.*, 2016 U.S. Dist. LEXIS 37200 (N.D. Cal/ Mar. 22, 2016) is also improper. The *Tan* ruling was made on a Motion to Dismiss, not a Motion for Class Certification. *Id*. at *2. As such, the decision centers on a discussion of whether the pleadings in the complaint were adequately pled. Further, *Tan* did not involve any allegation of off-the-clock security checks. Therefore, it is very difficult to see how *Tan* can be analogized in any way to the matter before this Court.

Finally, *Green v. Federal Express Corp.*, 614 Fed. App'x 905 (9th Cir. 2015), another case cited to by Defendant, is so distinguishable from the case at hand that is it shocking Defendant would even reference it.  In *Green*, the putative class asserted that they should be paid for the time after they "clocked in" but before their shift started.  *Id.* at 906.  The 9th Circuit held that employees were not under the "control" of the defendant because, for one, they were free to leave the premises if they wished.  *Id.* at 907.  Crucially, here employees had no such freedom but were instead required to wait inside the store and were not free to leave until they had been checked out by a manager.

### E.     Defendant's Rest Break Argument Mixes Apples With Oranges

Defendant argues that the rest period claim should not be certified because putative class members were given 15 minute rest periods.  Therefore, Defendant argues, any time spent waiting for and undergoing security checks would still leave putative class members with at least 10 minutes for their rest breaks.  This argument, however, is simply not appropriate at the class certification stage.  The fact is that all employees were subject to the same security check policy that required checks whenever leaving the store for any reason, including for rest breaks.  Whether the checks were short enough that it still left class members with sufficient time for legally compliant rest breaks is a merits or damages question that is not appropriate at this time.

Further, Defendant erroneously argues that it is lawfully permitted to require employees to stay on premises for their rest breaks.  This mixes apples and oranges and this argument makes absolutely no sense.  As the Court is aware, the issue in this case is whether Defendant's policy of requiring employees to undergo security checks whenever leaving the store, including for rest breaks, violates the law.  The issue is not whether Defendant is lawfully permitted to require employees to leave the work-site.  The issue is whether the control Defendant exerts over its employees before they are permitted to leave the store violates the rest break laws, which requires that breaks be unfettered. *See*, *e.g.*, *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, (S.D. Cal. 2010) (holding that class certification of rest and meal period claims was warranted where the plaintiffs were required to use Nextel pagers during breaks and stay in communication and breaks were not permitted until all work was finished); *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1144 (2012) (explaining that in *Brinker*, 53 Cal. 4th at 1004, the California Supreme Court explained that, for an employer to satisfy its break requirements, it must relieve its employees of all duty and ***relinquish all control over***

*their activities* and not impede or discourage them from doing so") (emphasis added); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 442, 447 (N.D. Cal. 2008) (holding that class certification was warranted on rest break claim because the employer's policy "discouraged" and "prevented" employees from taking rest breaks).

Whether Defendant may be legally allowed to require employees to remain on-site is not at issue in this case. Indeed, Defendant's PMK admitted that employees must undergo the security inspection to leave the premises before a rest break. The fact that some employees choose to avoid this laborious procedure and instead remain on premises actually shows that Defendant's policy impedes and discourages employees from taking rest breaks.

### F. A Class Action Is The Only Practical Method For Fair And Efficient Adjudication Of The Class' Claims

Defendant is clearly confused as to how liability can be shown on a class wide basis in this matter. What Defendant apparently fails to comprehend is that by merit of being at work in the first place, all class members have automatically suffered unpaid work time, as every employee who attended work underwent a security check upon leaving at the end of the day. Thus, liability is automatic so long as an employee attended work on a given day. This is established by Defendant's written policy, the deposition of Defendant's PMK, and the 35 declarations submitted by Defendant.

## IV. PLAINTIFF ALSO SEEKS KRISTEN AGNEW TO BE CERTIFIED AS CLASS COUNSEL

Since the filing of Plaintiff's Motion for Class Certification, Plaintiff's counsel, namely Diversity Law Group, has employed an additional attorney – Kristen Agnew. As such, Plaintiff also seeks to add Ms. Agnew as class counsel. As shown in her supporting declaration, Ms. Agnew is well-qualified and experienced in wage and hour class actions. (*See* Declaration of Kristen Agnew). As such, to the extent this Motion is granted, Plaintiff also requests that Ms. Agnew also be certified as class counsel.

## V. CONCLUSION

For the above-stated reasons, Plaintiff asks that the Court grant his Motion for Class Certification.

DATED:  August 15, 2016                    DIVERSITY LAW GROUP, P.C.

                                           By:    /s/ Larry W. Lee
                                                  Larry W. Lee
                                           Attorney for Plaintiff and the Class