UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHAVEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CONVERSE, INC.,<br><br>    Defendant. | Case No. 15-cv-03746 NC<br><br>**ORDER GRANTING CONVERSE'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING AS MOOT CHAVEZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 118, 124 |

Like any person who has worked in the service industry on an hourly basis, plaintiff Eric Chavez wanted to make sure he was being paid for every moment he was working for his employer, Converse, Inc. Converse has, and has had since the inception of the class period, a policy that requires that its employees be inspected by a manager before they leave their store's premises. The Court previously certified the class that Chavez seeks to represent, and both parties filed motions for summary judgment. Converse moves for summary judgment on the basis that the *de minimis* doctrine applies and that, based on its expert's study, the doctrine bars Chavez's claims. Chavez moves for partial summary judgment on one issue: that by requiring all class members to undergo exit inspections before leaving the premises, the class members were under Converse's control and should be paid for that time. Both motions are considered in this order.

Case No. 15-cv-03746 NC

For the reasons stated below, the Court finds that the *de minimis* doctrine applies to California Labor Code claims for unpaid wages under current law, and that Converse has met its burden in proving there is no genuine dispute of material fact as to the durations of the exit inspections being *de minimis*. The Court GRANTS Converse's motion for summary judgment, and DENIES AS MOOT Chavez's partial summary judgment motion.

## I. BACKGROUND

### A. Undisputed Facts

Chavez was a non-exempt hourly employee at Converse's Gilroy store from September 2010 to October 2015. Dkt. No. 124 at 8. Every time Chavez left the Converse store during or after a shift, he was required to undergo an exit inspection, which consisted of a visual inspection and a bag check, if he was carrying a bag. *Id*. Converse did not pay Chavez for the time these exit inspections took or the time spent waiting for a manager to come and inspect him, if a wait was required.

Converse operates 20 stores in California. *Id*. at 6. According to the deposition of Kimberly Kiefer, Converse keeps employee time clocks in the break room or locker area in the back of each store, behind the stockroom. *Id*. All exit inspections are supposed to be conducted at the "point of exit," which is located at the front of the store. *Id*. at 7. If an employee refuses to cooperate with an exit inspection, or interferes or hinders the search in any way, that employee "may be suspended pending further investigation which may include termination." Dkt. No. 124-1 at 41 (Store Exit Search 5.01), 43. Converse has maintained the same policy since at least 2011. Dkt. No. 124 at 7.

### B. Procedural History

This case was filed in Santa Clara County Superior Court on July 10, 2015. Dkt. No. 1. Converse removed this case on August 17, 2015. *Id*. The operative complaint is the First Amended Complaint. Dkt. No. 28. The Court granted Converse's motion for partial summary judgment on certain claims. Dkt. No. 80. The live claims in this case are for violations of (1) California Labor Code §§ 1194, 1197, and 1197.1; (2) Labor Code §§ 226.7 and 512; and (3) Labor Code § 226.7. *See* Dkt. No. 26, Dkt. No. 80 (order granting

Case No. 15-cv-03746 NC 2

partial summary judgment as to claims 2, 5, 6, and 7).

The Court certified the following class on September 22, 2016: "All current and former non-exempt retail store employees of Converse who worked in California during the period from July 10, 2011, to the present." Dkt. No. 89 at 2. The question common to all class members was whether the exit inspections occurred off-the-clock, such that the class would otherwise have been paid for the time it took for the exit inspection to occur, including any wait time.

Converse moves for summary judgment as to the entire complaint and Chavez moves for partial summary judgment. Dkt. Nos. 118, 124. The issues before the Court are: (1) whether the *de minimis* doctrine applies; (2) how long the exit inspections took; and (3) whether under the *de minimis* doctrine, the exit inspections are compensable. Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 12, 14.

### C. Expert Evidence

#### 1. The Crandall Study

Converse offers a time and motion study by Robert W. Crandall, MBA. A time and motion study is a tool that "collects granular level data on workers' activities of measuring the amount of time it takes to perform certain tasks." Dkt. No. 118-3 at 6. Crandall considered 436 exit inspections, categorizing the parts of the inspections as waiting time and bag checks or visual inspections. Crandall did not consider the time it took for an employee to pack up and walk to the front of the store after clocking out. *See id*. at 20. Crandall defines waiting time as "the time spent while waiting at the point of exit for an authorized person to arrive to perform a bag check or visual inspection." *Id*. at 9. A "bag check" is "the time spent while a manager or authorized person actually searches a bag or other container that can hold merchandise in the possession of an employee before exiting the store. A bag check may involve a request for an employee to open or unzip a bag so that its contents may be viewed." *Id*. at 9-10. A visual inspection is "the time spent while a manager or authorized person views an employee exiting the store, who does not have a

Case No. 15-cv-03746 NC                    3

bag or other container that can hold merchandise." *Id*. at 10.

290 out of the 436 exits (66.5%) observed had no wait time. Dkt. No. 118-3 at 20. 146 out of 436 exit inspections had some wait time. 120 out of 146 inspections (82.2%) had a wait time of 30 seconds or less. *Id*. 126 out of 146 inspections (86.3%) had wait times of 45 seconds or less. *Id*. 128 out of 146 inspections (87.7%) had wait times of one minute or less. *Id*. 144 out of 146 inspections (98.6%) had a wait time of two minutes or less. *Id*. The average wait time was 7.1 seconds, ±1.9 seconds at a 95% confidence level, which constitutes a 27.2% margin of error. *Id*. at 21. Per Crandall, if his findings were extrapolated to the entire class, the average wait time would be "between 5.1 seconds to 9.0 seconds at 95% confidence." *Id*.

As for bag checks, there were no bag checks for 67.7% of inspections observed. *Id*. at 22. Where only a visual inspection occurred, the average duration of the visual inspection was 2.3 seconds ±0.5 seconds at a 95% confidence level, constituting a 23.3% margin of error. *Id*. at 23. Per Crandall, if his findings were extrapolated to the entire class, the average visual inspection is between 1.8 at 2.8 seconds. *Id*. Bag checks occurred the other 32.3% of the time, and 53.2% of those bag checks lasted less than 3 seconds. *Id*. 100% of the bag checks observed took less than 30 seconds. *Id*. at 24. 95.4% of the observed exit inspections, combining wait time, visual inspections, and bag checks, took less than one minute. *Id*. at 25. 99.5% of exits combining wait time, visual inspections, and bag checks took less than 2 minutes. *Id*. The average combined time for an exit was 9.2 seconds ±2 seconds at a 95% confidence level, which constitutes a margin of error of 21.4%. *Id*.

### 2. Chavez's Evidence

Chavez challenges the Crandall Study, but does not offer the findings of a different study or a survey. Chavez retained expert Brian Kriegler, Ph.D. to evaluate and critique the Crandall Study. Kriegler challenges the reliability of the Crandall study on numerous grounds, the most significant of which is the short period of time that the Crandall Study sampled from, which according to Kriegler makes the study unrepresentative of the rest of

Case No. 15-cv-03746 NC          4

the class period. Dkt. No. 132 at 4. Kriegler also criticizes the Crandall Study's failure to consider the time it took for employees to walk from the back of the store to the front after clocking out but prior to the exit inspection. *Id*. Kriegler found that failure to consider travel time led to underreported exit inspection times. *Id*. at 8.

Kriegler also considered the deposition testimony of 12 randomly selected class members[1] and found that the average combined exit inspection time among those class members was 144 seconds. *Id*. at 15. Kriegler did not provide detail as to how he calculated these averages in his declaration. Converse questioned Kriegler regarding his methodology for calculating the 144 seconds at his deposition, and Kriegler stated the number came from taking the "midpoint of the typical ranges provided by the deponents." Dkt. No. 138-1 at 18 (Kriegler Dep.). Once Kriegler was asked to weigh the exit inspection durations based on the number of days each of the deposed employees worked, he lowered his average midpoint to 114 seconds. *Id*. at 25-27.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

---

[1] The deponents were Osvaldo Castro, Jessica Chin, Matthew Cornejo, Christian Escobedo, Julie Garcia, Leann Hannible, Angelica Leano, Julian Martinez, Dominic Passanisi, Michelle Rodriguez, Oscar Salomon, and Stephanie Sanchez. Dkt. No. 132 at 34.

Case No. 15-cv-03746 NC         5

*Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III. DISCUSSION

The issues before the Court are whether the *de minimis* doctrine applies to Chavez's claims, and if so, whether Converse satisfies the requirements of the doctrine.

### A. The *De Minimis* Doctrine Applies to Chavez's California Labor Code Claims For Unpaid Wages Under Current Law.

Converse seeks summary judgment against the certified class on the basis that the amount of time spent by its employees undergoing visual and bag inspections is *de minimis*. If this time is considered *de minimis*, it is not compensable. Chavez argues that the *de minimis* doctrine does not apply to his California Labor Code claims.

Converse must prove the applicability of the *de minimis* doctrine at trial. *See Gillings v. Time Warner Cable LLC*, 583 Fed. Appx. 712, 714 (9th Cir. 2014) (citing *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057 n.10 (9th Cir. 2010)). Likewise, as the movant on summary judgment, Converse must show an absence of any genuine issue of material fact on the *de minimis* doctrine. If Converse satisfies its burden, Chavez must demonstrate that a genuine issue of material fact does exist on the *de minimis* doctrine.

To determine if the amount of time at issue is *de minimis*, courts must consider: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984). "The Ninth Circuit has held that *de minimis* is appropriately characterized as a 'doctrine' or 'rule' rather than an affirmative defense that must be pled by a defendant." *Rodriguez v. Nike Retail Servs., Inc.*, No. 14-

Case No. 15-cv-03746 NC    6

cv-01508 BLF, 2017 WL 4005591, at *6 (N.D. Cal. Sept. 12, 2017) (citing *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1080 (9th Cir. 2016)).

Because the California Labor Code is under state law, and the *de minimis* doctrine arose in the context of the Federal Fair Labor Standards Act (FLSA), there is a question regarding whether the doctrine applies to claims for unpaid wages under the California Labor Code. As of the date of this order, the California Supreme Court has not answered this question, though the Ninth Circuit and California courts of appeal have applied the doctrine to such claims under California law. *See, e.g., Gillings v. Time Warner Cable LLC*, 583 Fed. Appx. 712, 714 (9th Cir. 2014) (collecting cases and noting the open question); *Corbin*, 821 F.3d at 1081 n.11; *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 527 (2009). Chavez has not pointed to, and the Court has found no case where a court held that the *de minimis* doctrine did not apply to California Labor Code claims. *See Gillings*, 583 Fed. Appx. at 714; *Rodriguez*, 2017 WL 4005591, at *6.

As District Court Judge Beth Freeman recently pointed out, however: "[t]he silence from California's highest court on the applicability of the *de minimis* doctrine to California Labor Code claims may soon be broken." *Rodriguez*, 2017 WL 4005591, at *7. This is because review is pending before the California Supreme Court on this issue. *Troester v. Starbucks Corp.*, Case No. S234969; *see Troester v. Starbucks Corp.*, 680 Fed. Appx. 511, 512 (9th Cir. 2016). However, the Court is bound by Ninth Circuit precedent saying that the *de minimis* doctrine does apply to claims for unpaid wages under the California Labor Code. The *de minimis* doctrine applies to all claims in this case.

**B.     The *Lindow* Test's Factors Are Satisfied.**

Before applying the elements of *Lindow*, the Court first considers the amount of time spent on the exit inspections. The Court then considers the following elements of *Lindow* to determine if exit inspections were *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." 738 F.2d at 1063.

### 1. The Durations of the Exit Inspections

The parties dispute whether the amount of time the exit inspections took is *de minimis*, and thus not compensable. The three-pronged *Lindow* test strikes "a balance between requiring an employer to pay for activities it requires of its employees and the need to avoid 'split-second absurdities' that 'are not justified by the actuality of the working conditions.'" *Rutti*, 596 F.3d at 1057 (quoting *Lindow*, 738 F.2d at 1062). Further, "[a]n important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work. *Lindow*, 738 F.2d at 1062. "There is no precise amount of time that may be denied compensation as *de minimis*." *Id*. "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id*. (collecting cases); *see also Rodriguez*, 2017 WL 4005591, at *11.

#### a. Evidence Presented

Both parties retained experts. However, only Converse offered the Court a study of exit inspection durations. The Crandall Study found that 66.5% of exit inspections had no wait time, and 94.04% (410/436) of exit inspections had a wait time of 30 seconds or less. *See* Dkt. No. 118-3 at 20. 95.9% (418/436) of exit inspections had a wait time of one minute or less. *See id*. 99.5% (434/436) of exit inspections had a wait time of 2 minutes or less. *See id.* The average wait time was 7.1 seconds ±1.9 seconds. *Id*. at 21. Visual inspections occurred 67.7%, and bag checks occurred the other 32.3% of the time. *Id*. at 22. Visual inspections took less than 20 seconds 100% of the time, and the average duration of a visual inspection was 2.3 seconds. *Id*. at 23. As for bag checks, 100% of bag checks took less than 30 seconds, and the average duration was 5.4 seconds. *Id*. at 24. In total, 95.4% of exit inspections took less than one minute, 99.5% took less than 2 minutes, and the average exit inspection took between 7.2 and 11.2 seconds. *Id*. at 25.

Chavez offered the Kriegler Declaration, but it is primarily dedicated to poking holes in the Crandall Study. Kriegler does not address the *de minimis* factors, though he does provide alternate exit inspection durations. Because the Court may not weigh the

evidence or make credibility determinations on summary judgment,[2] *see Anderson*, 477 U.S. at 255, the Court will not consider Chavez's attempt to discredit the Crandall Study. *See Rodriguez*, 2017 WL 4005591, at *8-9. The Court will consider the average duration of the exit inspections based on the class member depositions, as calculated by Kriegler. The Court will not consider the Supplemental Crandall or Kriegler Declarations, as they were untimely and improperly submitted.

In addition, the Court will consider the deposition testimony of class members. Not all of the depositions were discussed in the briefing, though Chavez's opposition to Converse's motion contained excerpts of several class member depositions. Because Chavez relied on these depositions, and because the Court was unsatisfied with Chavez's production of cherry-picked excerpts, the Court ordered the parties to produce all 23 depositions. These depositions are important because they suggest that the exit inspections took longer than the Crandall Study found. The Court will consider whether the deposition testimony is sufficient to create a triable issue of fact as to whether the duration of the exit inspections was *de minimis*. *Id*. at *10.

The Court summarizes the deposition testimony:

|    | **Deponent** | **Exit Inspection Durations** | **Exit Frequency** |
|----|--------------|-------------------------------|--------------------|
| 1. | William Osvaldo Castro | Searched for manager 20-25% of the time for exit inspections. Dkt. No. 143 at 143. Waited 10% of the time after notifying. *Id*. at 144. Where waiting was required, 25% of those inspections took 3-5 minutes. *Id*. at 149. 60% took 1-3 minutes, and 15% took under 1 minute. *Id*. at 149-150. Visual inspections and bag checks took a few seconds. *Id*. at 151, 163. | Left the premises 30-40% of the time on rest breaks. *Id*. at 139. Left the premises 75% of the time for meal breaks. |

---

[2] In *Rodriguez v. Nike*, the parties also retained experts Crandall and Kriegler. These cases are almost identical, and Nike owns Converse. Like in this case, the Kriegler Declaration in *Rodriguez* sought to raise doubt as to the reliability of the Crandall Study. Judge Freeman reached the same conclusion as this Court in finding that such arguments were not appropriate at summary judgment. Judge Freeman construed the objection to the Crandall Study as a motion to strike under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). 2017 WL 4005591, at *8-9. Here, like in *Rodriguez*, the Court does not find that the Crandall Study is so unreliable as to require exclusion. That Kriegler came to a different conclusion as to exit inspection durations than Crandall does not necessitate the disregard of the Crandall Study.

Case No. 15-cv-03746 NC          9

| | | | |
|---|---|---|---|
| 2. | Matthew Cornejo | Waited for a manager to conduct an exit inspection 25% of the time. *Id.* at 367. 60% of the time the exit inspection process took 30-60 seconds, as the bag check itself took 30 seconds. *Id.* at 372, 374. Visual inspections took about 5 seconds. *Id.* at 381. The other 40% of the time, the exit inspection process took between 2-5 minutes. *Id.* at 361. On 10-15 occasions, waited 10 minutes for inspection, but that was based on something going wrong at the store. *Id.* at 384-85. | Left the premises 50% of the time on rest breaks. *Id.* at 348. Left the premises for lunch 100% of the time. *Id.* at 358. |
| 3. | Christian Escobedo | Waited for exit inspection 100% of the time. *Id.* at 475. 75% of exit inspections took over 2 minutes, but did not specify how much longer than 2 minutes, except that sometimes the wait would be greater than 5 minutes. *Id.* at 477. 25% of exit inspections took approximately 30 seconds. *Id.* at 477-78. No times provided for durations of bag checks and visual inspections. | Left the premises for rest breaks 49% of the time. *Id.* at 463. Left the premises for meal breaks 40% of the time. *Id.* at 464. |
| 4. | Julie Garcia | Never waited for an exit inspection. *Id.* at 535. Visual inspections took between 1-5 seconds. *Id.* at 546. Bag checks took about 10 seconds. *Id.* at 549. | Never exited on rest breaks. *Id.* at 532. Left for lunch breaks 30% of the time. *Id.* at 533. |
| 5. | Angelica Leano | 30% of exit inspections involved waiting. *Id.* at 763. Of those 30%, 15% of waits were between 0-2 minutes, 80% were 3-5 minutes, and 5% were up to 7 minutes. *Id.* at 764-66. Visual inspections took 1-2 seconds. *Id.* at 798. Bag checks took 10-20 seconds. *Id.* at 796-97. | Left the store for meal and rest breaks 50% of the time. *Id.* at 757. |
| 6. | Jessica Chin | Waited less than 10% of the time for an exit inspection. *Id.* at 242. On those occasions, waited 2-3 minutes; the maximum time waited was 5 minutes. *Id.* at 245. Bag checks took 10-30 seconds. *Id.* at 250, 254. Bag checks took longer on closing shifts. *Id.* at 246. Visual inspections took 5-15 seconds. *Id.* at 259-260. | "Sometimes" left the store for lunch breaks, never left the store for rest breaks. *Id.* at 243. |
| 7. | Leeann Hannible | 30% of exit inspections involved waiting or searching for manager. *Id.* at 656. 12% of the exit inspections where wait required took 10-15 minutes. *Id.* at 659. 40% of those inspections took 5-10 minutes. *Id.* 48% of those inspections took 1-5 minutes. *Id.* Bag checks took 30 seconds. *Id.* at 667. No information regarding visual inspection durations. | Left the premises 45% of the time for rest breaks. *Id.* at 650. Left 75% of the time for meal breaks. *Id.* at 651. |

| | | | |
|---|---|---|---|
| 8. | Stephanie Sanchez | Worked at two locations from June 2013 to present. *Id*. at 1070. At the store she worked at from June 2013 to December 2015, 20% of the time, she had to look and/or wait for the manager to conduct an exit inspection. *Id*. at 1077. The waits would be from under one minute (50%) to and at most 5 (15%). *Id*. at 1085-88. At the second location worked, waited for manager 5% of the time. *Id*. at 1083-84. Never waited more than 3 minutes at the second location. *Id*. at 1089. Bag checks took 30 seconds to a minute if others' bags were also checked. *Id*. at 1090-91. Visual inspections took 30 seconds. *Id*. at 1092. | Left the premises for rest breaks 60% of the time at first Converse location, and 10% at the second location. *Id*. at 1073. At both stores left for meal breaks 70% of the time. *Id*. at 1074. |
| 9. | Eric Chavez | Always waited, the least amount of time an exit inspection took was 4 minutes; maximum was 18. Dkt. No. 131-1 at 67. | No information provided |
| 10. | Julian Urvano Martinez | 98% of exit inspections involved no waiting for the manager, other 2%, the wait lasted up to 2 minutes. *Id*. at 842. Visual inspections take 2 seconds. *Id*. at 844. Bag checks take 10 seconds. *Id*. at 845. Group bag checks at closing took about 25 seconds in all. *Id*. at 846. | Left the premises 50% of the time for meal breaks. *Id*. at 830. Never left during rest breaks. *Id*. |
| 11. | Dominic Passanisi | Never waited for bag checks. *Id*. at 949. Bag checks took ten seconds; visual inspections took two seconds. *Id*. at 952 | Left the premises for 50% of rest breaks. *Id*. at 946. Left for 90% of meal breaks. *Id*. at 947. |
| 12. | Michelle Rodriguez | Searched for a manager to do exit inspection 99% of the time. *Id*. at 983. Waited for a manager 85% of the time. *Id*. 99% of waits were under 1 minute. *Id*. at 986. Waited 5 minutes or more 5% of the time. *Id*. at 986. 95% of the time, bag checks took 5 seconds, the other 5% of times, the checks took 10 seconds. *Id*. at 987. Later amended that a manager was waiting at the front of the store for exit inspections 95% of the time. *Id*. at 994. | Left the premises during rest breaks 5% of the time. *Id*. at 980. Left for meal breaks 40% of the time. *Id*. |
| 13. | Oscar Salomon | Never searched for manager to conduct an exit inspection. *Id*. at 1025. 95% of exit inspections involved no waiting, for the 5%, a 2-3 minute wait. *Id*. at 1029, 1031. Bag checks took 1-10 seconds. *Id*. at 1035-36. Closing group bag checks took up to a minute. *Id*. at 1035. | Left premises 10% of the time for rest breaks. *Id*. at 1023. Left 50% of the time during meal breaks. *Id*. |

Case No. 15-cv-03746 NC         11

| | | | |
|---|---|---|---|
| 14. | Kristine Bartido | Did not wait for a manager for exit inspections during lunches most of the time. *Id*. at 78. If a wait was needed, it was because a bag check was needed; otherwise, a visual inspection was conducted. *Id*. at 85. Visual inspections took 10 seconds. *Id*. at 75. Bag checks took 2-30 seconds, depending on if it was a closing shift and the manager did a group bag check. *Id*. at 75, 103. | Left the premises for rest breaks 20-40% of the time. *Id*. at 66. Left 80% of the time for meal breaks. *Id*. at 67. |
| 15. | Lu Hoang Thai Chau | Never underwent a visual inspection, and though bag checks were conducted, never had a bag. *Id*. at 211-12. Observed that bag checks took no time. *Id*. at 218. | Always left the premises for rest and lunch breaks. *Id*. at 216. |
| 16. | Gisella Corcuera | Waited for a manager to come and perform an exit inspection between 25-33% of the time. *Id*. at 290. When a wait was required, the wait is 1 or 2 minutes. *Id*. at 291. Bag checks take 10-30 seconds depending on the size and pockets of the bag. *Id*. at 306. No clear answer given regarding visual inspection durations. | Left the premises 50% of the time for rest breaks, and 99% of the time for meal breaks. *Id*. at 284-85. |
| 17. | David Allen Dela Cruz | Cannot remember waiting for an exit inspection. *Id*. at 412. 20% of the time had a bag check, the other 80% a visual inspection. *Id*. at 409. Testified waiting a maximum of about 5 seconds to undergo a visual inspection. *Id*. at 416-18. Bag checks took about 5 seconds. *Id*. at 427. | Left the premises during rest breaks once or twice. *Id* at 434. |
| 18. | Lina Loretta Gaytan | 33% of the time wait for a manager to come for an exit inspection, the longest wait was 2 minutes. *Id*. at 586-87. The rest of the time, there was no wait. *Id*. at 592. The longest inspection took 3 minutes. Had a bag check 66% of the time, and those checks took 30-60 seconds. *Id*. at 608-09. Visual inspections took no time. *Id*. at 603. If working a closing shift, the bag check and visual inspection process for the group of people took 2 minutes. *Id*. at 621. | Never left premises for rest breaks. *Id*. at 582. Left premises for lunch breaks 33% of the time. *Id*. |
| 19. | Toni Navarro | Waited for an exit inspection 85-90% of the time during non-closing shifts. *Id*. at 871. Normally waited for an exit inspection 1-2 minutes, maximum wait was 3 minutes during non-closing shifts. *Id*. at 871-72. No wait for closing shifts, which constituted 60% of her shifts worked. *See id*. at 868, 879. Bag checks took about 30 seconds; visual inspections took a few seconds. *Id*. at 872, 880. On closing shifts, | Always left the premises during rest breaks. *Id*. at 867. No testimony regarding the frequency of exits during meal breaks. |

|  |  |  |  |
|---|---|---|---|
|  |  | which accounted for 60% of shifts, waited between 5-8 minutes after clocking out. *Id*. at 879, 886. 35% of the time closing waited less than 5 minutes, and 65% the wait was for 5 minutes or more. *Id*. at 888. |  |
| 20. | Kiani Palacio | Waited for exit inspections 10% of the time. *Id*. at 916. If there is a wait, it is never more than 1 ½ to 2 minutes. *Id*. At closing, security check process is "around a minute." *Id*. at 920. Visual inspections take between 0-5 seconds. *Id*. at 925. Bag checks take her about 45 seconds, and has had checks lasting 30 seconds. *Id*. at 919, 927. | Never leaves the premises for rest breaks. *Id*. at 915. Leaves 50% of the time during meal breaks. *Id*. |
| 21. | Leslie Vasquez | No wait for an exit inspection 95% of time on non-closing shifts; the 5% of the time a wait was required, the wait was about 5 seconds. *Id*. at 1144-46. Visual inspections and bag checks took a few seconds. *Id*. at 1157, 1159. At closing, the exit inspection process took less than 1 minute 75% of the time, up to 2 minutes 20% of the time, and greater than 2 minutes 5% of the time. *Id*. at 1171-72. | Left the premises 10% of the time during rest and meal breaks. *Id*. at 1140. |
| 22. | David Villalobos | 70-80% of closing exit inspections, from clocking out to leaving the store, took under 1 minute. *Id*. at 1231. The exit inspection process rarely took greater than 2 minutes. *Id*. 65-70% of exit inspections required waiting for the manager. *Id*. at 1237. Bag checks took "seconds;" group bag checks took 10-15 seconds. *Id*. at 1245, 1250. Visual inspections required a slowing in pace when exiting. *Id*. at 1254. | Left the premises for rest breaks 80% of the time, and 90% of the time for meal breaks. *Id*. at 1226. |
| 23. | Lynie Abadilla | Waited up to 5 seconds for an exit inspection, but did not specify how often this happened. *Id*. at 25. Bag checks take about 10 seconds. *Id*. at 26. Visual inspections take about 2 seconds. *Id*. at 32. | Left premises every rest break. *Id*. at 17. Left for 10% of meal breaks. *Id*. at 18. |
| 24. | Stephanie Izaquirre | Waited for a manager to conduct an exit inspection 5% of the time; where there was a wait, it would be about 1-2 minutes. *Id*. at 722, 724. Bag checks would not take more than 10 seconds. *Id*. at 725. Visual checks required a slowing in pace when exiting. *Id*. at 730-31. | "Sometimes" left the premises for rest breaks. *Id*. at 717. No information regarding meal breaks. |

Case No. 15-cv-03746 NC    13

1    As made evident by the Court's summary, not all of the testimony is easily
2    quantifiable because both sides asked different questions to each deponent, eliciting
3    different types of responses. Class members were also often confused by questions asked
4    by both parties and changed their answers to questions. Further, class members did not
5    always quantify how long exit inspections took, even if they could provide upper or lower
6    bounds. The Court endeavored to account for the clearest final answers given.

### b. Analysis

First, there is a dispute between the parties regarding whether the exit inspections included the time it took the employee to pack up and travel to the front of the store after clocking out in the back room. *See* Dkt. No. 138 at 11 n.3. This time is not includable. First, allegations that this time should be included do not appear in the complaint, Chavez's motion, or Chavez's opposition to Converse's motion. The first time the Court encountered this issue in the papers was Kriegler's Declaration, which stated that Kriegler's understanding was that Chavez was arguing that travel time from the back to front of the stores was compensable. Dkt. No. 132 at 12. This issue was not briefed, and Kriegler did not account for this time in his declaration. *See id.* at 14-15, 44-51.

Second, travel time is not compensable because Converse did not place restrictions on the activities of walking or packing up, which the class members would have done regardless on their way out. In contrast, in *Morillion v. Royal Packing Co.*, the plaintiffs were required to ride the employer's bus to and from the fields, and "during the bus ride plaintiffs could not drop off their children at school, stop for breakfast before work, or run other errands requiring the use of a car. Plaintiffs were foreclosed from numerous activities in which they might otherwise engage . . . ." 22 Cal. 4th 575, 586 (2000). The time riding the bus in *Morillion* is analogous to the time waiting for and undergoing the actual visual inspections and bag checks at the front of the store. This time *is* potentially compensable.

It does not make sense to compensate employees for time spent packing up and walking to the exit because store employees pack up and then walk to the exit with or

without an exit inspection. Indeed, there is no indication that an employee could not use the restroom, socialize, request a Lyft, or purchase merchandise before undergoing the exit inspection. As far as the Court knows, Converse does not control its employees or foreclose on their activities while they pack up and walk to the exit.

Next, the Court analyzes the evidence presented. Converse proffers the Crandall Study, and that study found that the average exit inspection took between 7.2 and 11.2 seconds. Dkt. No. 118-3 at 25. Crandall's findings strongly suggest the exit inspections took barely a few seconds and are thus not compensable. In his deposition, Kriegler stated that the average midpoint for the time an exit inspection took for each of the 12 deponents he considered was 114 seconds. Dkt. No. 138-1 at 25-27 (Kriegler Dep.).

The Court turns to the testimony of the 23 deposed class members and Chavez. First, the exit inspection process includes any time searching or waiting for a manager to conduct the inspection, as well as the duration of the actual visual inspection or bag check.

The class members typically testified that visual inspections took between 2 and 10 seconds, with Stephanie Sanchez being an outlier in testifying that visual inspections took 30 seconds. Dkt. No. 143 at 1092. As for bag checks, the greatest time any deponent testified that an individual bag check took was 60 seconds. *See id*. at 609 (Gaytan Dep.). Bag checks on average took between 10-30 seconds, with 60 seconds being the highest testified to for an individual bag check. However, several class members never underwent bag checks because they never brought a bag, and another class member testified to purposefully leaving her bag at the store to avoid a bag check. *Id*. at 17 (Abadilla Dep.), 146 (Castro Dep.), 211-12 (Chau Dep.), 844 (Martinez Dep.), and 958 (Passanisi Dep.). This is hardly surprising given that bag checks took longer than visual inspections.

In addition, neither party discussed the frequency of bag checks versus visual inspections, except for Crandall's finding that visual inspections were twice as common as bag checks. Dkt. No. 118-3 at 22. As Chavez never discussed this issue, it's obvious that Crandall's finding was not rebutted. The class member testimony regarding bag check and visual inspection durations fairly correlates with the Crandall's findings. *See* Dkt. No.

Case No. 15-cv-03746 NC        15

118-3 at 23-24.[3]  The Court next considers wait times.

Only Eric Chavez testified to always having to wait more than one minute for exit inspections. Dkt. No. 131-1 at 67 (Chavez Dep.). Chavez alleges always having to wait at least 4 minutes. *Id*. The Court considers whether there is evidence to support the named plaintiff's allegations. No other class member testified to always waiting for an exit inspection. As to class members who testified to undergoing exit inspections that exceeded one minute during at least half of their shifts, only Christian Escobedo testified that this occurred.[4] Mr. Escobedo testified that he waited over 2 minutes for 75% of his exit inspections. Dkt. No. 143 at 477. The rest of the class members testified to either never waiting for an exit inspection, or waiting for an inspection less than 50% of the time.

Mr. Escobedo's testimony is insufficient to find that the amount of daily unpaid time is not *de minimis* where 22 other class members waited for exit inspections less than half of the time. *Lindow*, 738 F.2d at 1062. Chavez has not met its burden to show that there is a dispute of material fact that each exit inspection is short in duration and not compensable. "[A] district court is not required to comb the record to find some reason to deny a motion for summary judgment[.]" *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). Chavez benefitted here because

---

[3] It appears that bag check and visual inspection durations were greater when an employee worked a closing shift and exit inspections occurred in groups. However, not all class members testified regarding this issue, and the parties did not brief these differences. The Court does not have enough information to make any finding on this issue.
[4] Toni Navarro testified that 85-90% of non-closing shifts involved waiting about a minute to a minute and a half, but closing shifts required no waiting. *Id*. at 868, 872 (Navarro Dep.). The Court will not consider her as a class member who waited over one minute for exit inspections over 50% of the time because 60% of her shifts were closing shifts, which she testified required a wait of between less than 5 and 8 minutes after clocking out. *See id*. at 877, 888. However, Ms. Navarro did not testify as to how long she waited after packing up and traveling to the bag check location, so the Court cannot tell how long she actually waited for a bag check. Ms. Navarro testified she always left the premises during rest breaks but provided no testimony as to the frequency of her exits during meal breaks. *Id*. at 867. In addition, Ms. Navarro testified to having to wait 80% of the time for a visual inspection during a discrete period of time, but did not specify if she was referring to closing shift exits, non-closing shift exits, or exits during rest breaks. *Id*. at 881. Unfortunately, the deposition transcript is not clear on this issue, and Chavez did not follow-up, or even discuss Ms. Navarro's testimony in the opposition to Converse's motion. The Court will not guess what Ms. Navarro meant.

Case No. 15-cv-03746 NC        16

the Court has gone beyond the motion papers to consider whether there is a genuine dispute of material fact as to the duration of the individual exit inspections. There is not. However, the Court must consider if the exit inspections in the aggregate are *de minimis*.

### 2. The Practical Administrative Difficulty of Recording Additional Time

The first element of the *Lindow* test is the administrative difficulty in recording the alleged unpaid work. 738 F.2d at 1062. An employer "need not prove it is 'technically infeasible' to record the additional time; only that it would be administratively difficult to do so given its timekeeping system." *Rodriguez*, 2017 WL 4005591, at *14; *see also Corbin*, 821 F.3d at 1082.

According to Kimberley Kiefer, the time clocks in Converse stores have never been located anywhere except at the back of the stores. Dkt. No. 138-1 at 7-8 (Kiefer Third Dep.). Kiefer stated that the reasons for keeping the clocks in the "back of the house" are associate privacy and convenience if they use the clocks to keep track of their time or request time off. *Id*. at 8. In addition, Converse does not want non-consumer technology on their sales floor. *Id*. at 9. These are legitimate business concerns, and Converse is not required to change the configuration of its time clocks simply because it is feasible and other retailers have their time clocks at the front of the store. *Rodriguez*, 2017 WL 4005591, at *14. Also, the effect of having employees not clock out before bag checks would potentially cause the class members a delay in leaving the store because after a bag check in the front of the store, an employee would have to run to the back of the store to clock out.

As to feasibility, Kiefer testified that Converse records time by the minute, not in increments of seconds. Dkt. No. 118-2 (Kiefer Dep.). However, the Court will not rely on this argument, because the class member depositions suggest that exit inspections took longer than one minute with some frequency. This factor favors Converse.

### 3. The Aggregate Amount of Compensable Time

The Court next considers the size of the aggregate claim. "Courts have granted relief for claims that might have been minimal on a daily basis but, when aggregated,

Case No. 15-cv-03746 NC    17

amounted to a substantial claim." *Lindow*, 738 F.2d at 1063. As stated above, "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id*. at 1062 (collecting cases); *see also Rodriguez*, 2017 WL 4005591, at *11.

The Crandall Study suggests that the aggregate amount of daily compensable time would be less than one minute because each exit inspection took an average of between 7.2 and 11.2 seconds. Dkt. No. 118-3 at 25. This evidence is sufficient to shift the burden to Chavez to show that there is a genuine dispute of material fact that the aggregate amount of time is not de *minimis*. *See Barthelemy*, 897 F.2d at 1004. Taking Kriegler's earlier average score of 144 seconds, or 2 minutes and 24 seconds, it would take five *daily* exits by the class members to exceed the aggregate 10-minute mark. The class member depositions do not suggest the exit inspections on average took any longer than Kriegler suggests, and there is even less support for the idea that class members exited the premises five times during their shifts.

Neither party briefed the issue of how often class members exit the premises during rest and meal breaks. This issue should be examined for the Court to determine whether aggregate exit inspection durations were *de minimis*. *See Lindow*, 738 F.2d at 1062. Based on the depositions, the maximum number of times a class member working a full-time shift would have exited in one day is four times. This is because a class member may exit the store during their two rest breaks, meal break, and at the end of their shift. Employees working part-time shifts would exit twice, during a rest break and at the end of their shift.

Lu Hoang Thai Chau testified that he left the store 100% of the time during rest and meal breaks. Dkt. No. 143 at 216. Toni Navarro and Lynie Abadilla testified they left the premises during rest breaks 100% of the time. *Id*. at 17, 867. Matthew Cornejo left the premises during meal breaks 100% of the time. *Id*. at 358. The remainder of the deposed class members left their stores somewhere between never and 99% of the time for rest and meal breaks. Most class members did not leave the premises every time they were given

Case No. 15-cv-03746 NC 18

1 the opportunity to, and so did not undergo as many exit inspections daily as they could
2 have. For purposes of this motion, these findings mean there is no evidence that the class
3 member's aggregate time, even considering Kriegler's greater exit inspection time of 144
4 seconds would have crossed the 10-minute threshold daily. The class members simply did
5 not exit often enough to have to go through five exit inspections daily. *Lindow*, 738 F.2d
6 at 1062 (collecting cases); *see also Rodriguez*, 2017 WL 4005591, at *11. This element
7 weighs in favor of Converse.

### 4. The Regularity of the Additional Work

The last element the Court must consider under *Lindow* is the regularity of the additional work. 738 F.2d at 1063. Chavez argues that the class members regularly performed additional work because they always had to undergo exit inspections when they left the store. Dkt. No. 131 at 29. True as this may be, it does not speak to whether the class members regularly performed *compensable* work. The Court finds sound Judge Freeman's conclusion that what needs to be considered at this prong in the *Lindow* test is the regularity of compensable work. *Rodriguez*, 2017 WL 4005591, at *17 (citing *Lindow*, 738 F.2d at 1063-64 and *Corbin*, 821 F.3d at 1082). Under the circumstances, compensable work means work that exceeded one minute in length, as Converse's timekeeping system does not record time in second intervals.

The Court first notes that it found in its order certifying the class that the exit inspections occurred off the clock because the time clocks are located in the back of the store and the exit inspections occur at the front exit. Dkt. No. 89 at 3. The Crandall Study found that 95.9% of exit inspections took one minute or less, s*ee* dkt. no. 118-3 at 20, and 99.5% of exit inspections had a wait time of 2 minutes or less. *See id.* The average time to complete an exit inspection was 7.2 to 11.2 seconds. *Id*. at 25. These findings are significant because Converse's timekeeping system cannot measure time in less than 1 minute increments. Dkt. No. 118-2 (Kiefer Dep.). Crandall's findings suggest that the overwhelming majority—95.4%—of exit inspections would not have been measurable because they lasted less than one minute. The Court now considers Chavez's evidence.

Construing the facts in the light most favorable to Chavez, he has at most established that the exit inspections took anywhere from the 2 seconds Dominic Passanisi's exit inspections lasted to the 18 minutes Chavez alleges to have waited at least once. Dkt. No. 143 at 949; Dkt. No. 131-1 at 67. Kriegler's Declaration does not discuss the regularity of compensable exit inspections, so the Court considers the deposition testimony of the class members. Only Eric Chavez testified to always having to wait for an exit inspection for one minute or more. Dkt. No. 131-1 at 67. Toni Navarro testified that she waited for an exit inspection 1-2 minutes 85-90% of the time during non-closing shifts. *Id.* at 871-72. Christian Escobedo testified to waiting 2 minutes or more 75% of the time. *Id.* at 475. Thus, 3 out of 24 class member arguably testified that their exit inspection took greater than one minute with regularity. This testimony is insufficient to rebut the Crandall Study's finding that the overwhelming majority of exit inspections took less than one minute, especially where 21 other class members did not experience compensable exit inspections with any regularity. On balance, this element weighs in favor of Converse.

Converse has satisfied the elements of *Lindow*, and the Court finds that as a matter of law, the exit inspections were *de minimis*. Because Converse satisfies the *Lindow* test, all of the claims in the complaint must be dismissed. The Court thus DENIES AS MOOT Chavez's motion for partial summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Converse's motion for summary judgment, and DENIES AS MOOT Chavez's motion for partial summary judgment. The Court will enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: October 11, 2017

NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 15-cv-03746 NC    20