UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC CHAVEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CONVERSE, INC.,<br><br>    Defendant. | Case No. 15-cv-03746-NC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 169 |

In this chapter of his employment class action, plaintiff Eric Chavez moves for partial summary judgment as to whether defendant Converse, Inc.'s retail store employees were under its control when they underwent security checks before leaving. *See* Dkt. No. 169 at 6; *see also* Dkt. No. 174 at 4. Because Converse's employees were required to submit to security checks between July 10, 2011, and November 19, 2019, the Court GRANTS Chavez's motion for partial summary judgment as to claims one, three, four, five, six, and seven.

**I.   Background**

    **A.   Factual Background**

Converse operates 20 stores in California. *See* Dkt. No. 169-1, Ex. B ("May Depo.") at 24:16–18. At each store, Converse installs time clocks in back rooms for their employees to clock in and clock out. *See id.*, Ex. A ("Kiefer Depo.") at 41:13–22. Converse's stores typically have a single point of exit and entry, located at the front of the store away from the break room. *See id.* at 43:18–24.

Whenever an employee leaves a store, they are subject to an exit search. *See id.* at 65:2–66:25; *see also id.*, Ex. 3, 4. Under Converse's exit search policy, "[i]f an employee refuses to cooperate, interferes, or hinders the search in any way . . . that employee may be suspended pending further investigation which may include termination. *Id.*, Ex. 4 at 1. Exit searches take place "closest to the point of exit," which is typically near the front door. *Id.* Searches are conducted visually. *See id.* at 73:21–25. Employees will typically flash the pockets of their jackets or sweatshirts to demonstrate that they are empty. *Id.* at 73:24–74:4. If an employee brings a bag, they are required to open the bag for inspection. *Id.* at 64:18–24.

As of November 19, 2019, Converse no longer requires its employees to submit to an exit search. *See* Dkt. No. 179-1, Ex. A ("Ziegler Decl.") at 16:23–25, 23:11–17.

### B. Procedural History

Chavez filed his first amended complaint on December 4, 2015, for various violations of the California Labor Code stemming from Converse's alleged failure to compensate its employees for time spent on exit searches. *See* Dkt. No. 28. On September 22, 2016, the Court certified a class of "[a]ll current and former non-exempt retail store employees of Converse who worked in California during the period from July 10, 2011, to the present." *See* Dkt. No. 89.

On October 11, 2017, the Court granted summary judgment in favor of Converse based on the federal *de minimis* doctrine. *See* Dkt. No. 144. Chavez appealed. *See* Dkt. No. 146. Shortly after, the California Supreme Court decided *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) and held that the federal *de minimis* doctrine did not apply to wage claims under California law. In light of *Troester*, the Ninth Circuit reversed and remanded this case for further proceedings. *See* Dkt. Nos. 156, 168.

Chavez now moves for partial summary judgment. *See* Dkt. No. 169. The sole issue in Chavez's motion is whether Converse exercises control over its employees when they undergo an exit search. Pending before the Court is Converse's own motion for summary judgment, which is set for hearing on March 4, 2020. *See* Dkt. No. 179. This

2

order does not resolve that motion.

## II. Legal Standard

Under Federal Rules of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Once the moving party meets its burden, then the non-moving party must cite "particular parts of materials in the record" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A "genuine issue" exists if a reasonable jury could find for the non-moving party. *E.g.*, *Open Text v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 428365, at *1 (N.D. Cal. Jan. 30, 2015). On summary judgment, the Court does not make credibility determinations or weigh conflicting evidence, as these determinations are left to the trier of fact at trial. *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

## III. Discussion

California law requires employers to pay employees at least minimum wage for all hours worked. *See* 8 Cal. Code Regs. § 11090. This includes "all time in which an employer exercises control over the employee." *Ridgeway v. Walmart*, ___ F.3d ____, Case Nos. 17-15983, 17-16142, 2020 WL 55073, at *8 (9th Cir. Jan. 6, 2020) (citing *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 581–84 (2000)). The only issue here is whether Converse "exercises control over" its employees when conducting exit searches.

In *Ridgeway*, the Ninth Circuit "boil[ed] down" the issue of control to "whether the employee may use break or non-work time however he or she would like." 2020 WL 55073, at *9 (citations omitted). "[T]his case-specific approach focuses on the level of the employer's control on employees, not necessarily whether the employer requires certain activities." *Id.* Thus, in *Ridgeway*, "the mere fact that Wal-Mart require[d] its employees to take layovers" was not dispositive of the control issue. *Id.* Rather, the Ninth Circuit was persuaded that Wal-Mart's written policy suggested that Wal-Mart controlled its

3

drivers during layovers because (1) drivers were required to gain preapproval before taking a layover at home, (2) drivers were required to record at-home layovers; and (3) drivers could be subject to disciplinary action for taking unauthorized layovers at home. *Id.*

Likewise, the California Supreme Court concluded in *Morillion* that a company "controlled" its employees by requiring them to take company buses to travel to their work sites. 22 Cal. 4th at 584. The company's employees "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation." *Id.* at 586. By contrast, control is absent if employees were "offered a benefit or service that [they] could choose, but were not required to take advantage of." *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 957 (9th Cir. 2018) (citing *Morillion*, 22 Cal. 4th at 588); *see also Silva v. See's Candy Shops, Inc.*, 7 Cal. App. 5th 235, 253 (2016) (employees not under the employer's control during "grace periods" when "they could (and did) engage exclusively in personal activities" during those periods).

Converse requires its employees to submit to an exit search when leaving. *See* Kiefer Depo. at 65:2–66:25. Its policy states:

**Store Exit Search 5.01**

- **Overview:**

Anytime an employee or vendor leaves the store for any reason they are subject to a bag search. It is the responsibility of the employee leaving the store to have a member of the Management team inspect their belongings. This includes breaks, lunches, and when an employee is in the store on a scheduled day off.

If an employee refuses to cooperate, interferes, or hinders the search in any way or if illegal contraband, unpaid Converse merchandise or weapons are found, that employee may be suspended pending further investigation which may include termination.

*Id.*, Ex. 4. The policy also provides for "Coat and Jacket Searches" and requires "[a]ll coats/jackets . . . be carried to the exit." *Id.*

4

Under the exit search policy as written, Converse exercises control over its employees during exit searches. Employees are required to make sure a manager inspects their belongings. See i*d.* ("It is the responsibility of the employee leaving the store to have a member of the Management team inspect their belongings."). Failure to comply with exit searches could have significant consequences including termination. And employees are foreclosed from numerous activities during searches. Employees are, for example, required to carry and not wear their coats and jackets during the inspections. *See id.* ("All coats/jackets should be carried to the exit."). Nor can employees barge through the exit and ignore store management.

Converse raises a few arguments in response. First, Converse points out that the exit search policy does not require employees to spend any amount of time undergoing exit searches. But just as the search policy permits zero-second searches, it also permits exit searches that last several minutes. And for the duration of the search, Converse's employees are not free to do whatever they wish. The mere possibility that zero-second searches can happen does not mean Converse's employees are free from its control.

There is a dispute of material fact as to whether exit searches took any amount of time or if searches were even conducted when employees did not bring a bag. *See, e.g.*, Dkt. No. 172-1, Ex. C ("Cano Depo.") at 65:7–17 (describing zero-second visual inspection of employees); Dkt. No. 172-1, Ex. D ("Chau Depo.") at 9:24–10:5 (stating that employees did not need to undergo a check if they did not bring a bag). That dispute, however, goes to damages. If Converse's employees spent literally no time getting searched, then there is simply no time for Converse to compensate. But if Converse's employees spent *some* time getting searched or waiting for store management, then that time may be compensable.[1]

---

[1] Notably, the California Supreme Court left open whether "there are wage claims involving employee activities that are so irregular or *brief in duration* that employers may not reasonably be required to compensate employees for the time spent on them." *Troester*, 5 Cal. 5th at 848 (emphasis added); *see also id.* at 849 ("[T]here is room for a rule of reason to avoid a situation forcing employers to monitor every fraction of every second of employee time.") (Cuéllar, J., concurring).

Converse also argues that employee exits necessarily include "walking time" and its employees are not subject to their control during that time. Chavez, however, has disclaimed "walking time" as part of exit searches. *See* Dkt. No. 174 at 6–7 ("Plaintiff seeks a ruling that class members are subject to Defendant's control *while waiting for and undergoing the security inspection*. Thus, Defendant's walk-time argument is completely irrelevant.") (emphasis added).

Finally, Converse contends that its employees were not under their control because they could avoid incurring additional time in connection with exit searches by choosing to not bring a bag, coat, or jacket. However, even if Converse is correct, their own expert opined that employees spent an average of 9.2 seconds waiting for or engaging in exit inspections and only 5.4 seconds of that time is attributable to bag checks. *See* Dkt. No. 118-3 ("Crandall Decl.") ¶¶ 111, 120. In other words, the fact that some exit search time can be avoided does not help Converse.

**IV. Conclusion**

The Court GRANTS Chavez's motion for partial summary judgment. As to claims one, three, four, five, six, and seven, the Court finds as a matter of law that Converse exercised control over its employees when it subjected its employees to exit searches.

**IT IS SO ORDERED.**

Dated: January 15, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge